Hy-On-A-Hill Farm v. Agriculture       CV-00-443-JD   07/31/01
                  UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Hy-On-A-Hill Trout Farm, Inc.

     v.                                  Civil No. 00-443-JD
                                         Opinion No. 2001 DNH 137
Dan Glickman, Secretary
of Agriculture, et al.


                              O R D E R


     The plaintiff, Hy-On-A-Hill Trout Farm, Inc., seeks review

of the decision of the National Appeals Division of the United

States Department of Agriculture ("USDA") denying the Farm

benefits under the 1999 Crop Disaster Program.  The Farm also

alleges that the decision was a discriminatory application of the

Program's requirements in violation of the Farm's Fifth Amendment

equal protection and due process rights.  The defendants, Dan

Glickman, Secretary of Agriculture, Norman G. Cooper, Director,

National Appeals Division, and James McConaha, State Executive

Director of the USDA Farm Service Agency, move for summary

judgment.  The Farm objects.


                        Standard of Review

     Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999).

A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000). A material fact is one that "has the potential to change the outcome of the suit under the governing law" and a factual dispute is genuine if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." Grant's Dairy--Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000).


Background

Hy-On-A-Hill Trout Farm, Inc. operates a commercial fish hatchery in Plainfield, New Hampshire, raising brown and rainbow

2

trout for stocking and for human consumption.  The Farm operated for twenty-five years without having water shortages caused by drought.  The Farm experienced its first large trout losses due to drought conditions during the spring and summer of 1999.

The Farm applied in January of 2000 for assistance under the 1999 Crop Disaster Program.  The 1999 Crop Disaster Program was enacted "to make emergency financial assistance available to producers on a farm that have incurred losses in a 1999 crop due to a disaster, as determined by the Secretary."  Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act of 2000, Pub. L. 106-78, Title VIII, § 801(a), 113 Stat. 1175, as amended Pub. L. 106-113, 113 Stat. 1536 (1999) (hereafter, the pertinent part of the Act will be referred as the 1999 Crop Disaster Program or Program and will be cited by section only without repeating the public law citation).  The terms and conditions applicable to the 1999 Crop Disaster Program are provided in regulations at 7 C.F.R. Part 1478.  See § 824(a).  In addition, the Deputy Administrator for Farm Programs issued a handbook, the "Handbook 2-DAP," for guidance in the administration of the 1999 Crop Disaster Program.

The Farm's application for relief was denied by the county committee of the Farm Service Agency based on a provision of the Deputy Administrator's handbook.  The Farm appealed the decision

3

to the National Appeals Division. After an evidentiary hearing, the Hearing Officer held that the provision of the handbook relied on by the county committee was stricter than the applicable regulations and that the handbook provision did not "logically flow" from the published regulations. The county committee's decision was reversed as erroneous.

The Administrator of the Farm Service Agency filed a request with the Director of the National Appeals Division for review of the Hearing Officer's decision. The Director reversed, concluding that the county committee's rejection of the Farm's application was not erroneous. In support of the determination, the Director reasoned that the Secretary of Agriculture authorized the Deputy Administrator of Farm Programs to issue instructions on how to implement the Crop Disaster Program, that the regulations required aquacultural species to be raised in a controlled environment, including an adequate water supply, and that the Farm's loss of trout was due to an inadequate water supply. The Farm then brought suit in this court.

## Discussion

The Farm brings two claims for relief. First, the Farm contends that the decision to deny the Farm's application for Program benefits must be set aside under the review provided by

4

the Administrative Procedures Act at 5 U.S.C.A. § 706 and asks that it be awarded benefits under the Program.  Second, the Farm contends that the decision was discriminatory in violation of the Fifth Amendment because other aquaculture farmers received benefits for fish losses caused by drought and agriculture farmers who did not comply with the requirements of the 1999 Crop Disaster Program also received benefits.[1]  The defendants move for summary judgment on both claims.

A.    Review under the Administrative Procedures Act

Judicial review of a decision made by an agency of the Department of Agriculture is governed by the Administrative Procedures Act, as codified at 5 U.S.C.A. § 706.  See 7 U.S.C.A. § 6999.  As is pertinent to this case: "[t]he reviewing court shall- . . . hold unlawful and set aside agency action, findings, and conclusions found to be-  (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . (E) unsupported by substantial

---

[1]The Farm appears to distinguish its first claim, seeking review under the APA, from its second claim, stating a constitutional violation.  As such, it appears that the Farm is not seeking a second basis for review under the APA, pursuant to 5 U.S.C.A. § 706(2)(B), by alleging a constitutional violation.

evidence . . . ." § 706(2). "In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." § 706.

### 1. The record for review.

The defendants move to strike an exhibit submitted by the Farm in support of its objection to summary judgment. Since the court has not considered the disputed exhibit in ruling on the motion for summary judgment, it is not necessary to decide whether the exhibit should be stricken from the record. For purposes of the present motion for summary judgment, the defendants have preserved their right to object to the disputed exhibit. See Perez v. Volvo Car Corp., 247 F.3d 303, 314 (1st Cir. 2001). The motion is deemed moot and is denied without prejudice.

### 2. Provisions of the 1999 Crop Disaster Program used to decide the Farm's application.

The Act implementing the 1999 Crop Disaster Program authorizes funds from the Commodity Credit Corporation for emergency financial assistance "to producers on a farm that have incurred losses in a 1999 crop due to a disaster, as determined

6

by the Secretary." § 801(a).  The Program covers losses in quantity or quality to crops and "severe economic losses due to damaging weather or related condition" as qualifying losses and lists losses to fisheries as a covered crop.  See § 801(c), (d). Congress authorized the Secretary and the Commodity Credit Corporation to "promulgate such regulations as are necessary to implement [the Program]."  § 824(a).  Congress exempted the promulgation of Program regulations from certain restrictions including the notice and comment requirements of 5 U.S.C.A. § 553.  See id.

The Program regulations provide the terms and conditions by which "the Secretary of Agriculture will make disaster payments available to certain producers who have incurred losses in quantity or quality of their crops due to disasters."  7 C.F.R. § 1478.1.  The Program was to be "carried out in the field by State and county Farm Service Agency (FSA) committees" who "do not have the authority to modify or waive any of the provisions" of the applicable regulations.  7 C.F.R. § 1478.2(a), (b).  The regulations provide that "[p]roducers will be able to receive benefits under this part for losses to eligible 1999 crops as determined by the Secretary."  Id.; see also § 1478.4(a). "Disaster means damaging weather including drought . . ." and eligible crops include aquaculture.  7 C.F.R. § 1478.3.

7

"Aquaculture means the reproduction and rearing of aquatic species in controlled or selected environments . . . ." Id. "Aquacultural species means any species of aquatic organism grown as food for human consumption . . . propagated and reared in an aquatic medium by a commercial operator on private property in water in a controlled environment." 7 C.F.R. § 1437.3 (as incorporated by § 1478.3). Disaster benefits are available only for "aquacultural species that were planted or seeded on property owned or leased by the producer where that land has readily identifiable boundaries, and over which the producer has total control of the waterbed and the ground under the waterbed," but are not available for naturally growing species. 7 C.F.R. § 1478.18.

To approve benefits for a producer, the county committee must determine that because of a disaster, the producer sustained a loss in excess of thirty-five percent of the value of the crop. See 7 C.F.R. § 1478.11(a)(3). Disaster benefits are not available for value losses caused by "poor management decisions or poor farming practices as determined by the county committee on a case-by-case basis" or "[t]hat are not as a result of a natural disaster." § 1478.11(b)(1), (3).

The handbook issued by the Deputy Administrator of the FSA included a section pertaining to aquaculture which states that

8

"eligible aquacultural species must be raised: . . . in water in a controlled environment." Handbook ¶ 51A, Admin. Rec. at 6. The handbook defined the irrigation and water quality components of a controlled environment as follows: "Drought shall **not** be a major peril as all aquacultural operators shall have systems and practices in place to ensure that the aquacultural species have adequate, quality water or aquatic medium." Handbook ¶ 51D, Admin. Rec. at 8. In evaluating the producer's control over irrigation and water quality, the county committee was to consider "whether the source of water is adequate to ensure continued growth and survival of the aquacultural species even in the event of severe drought [and] whether the aquacultural facility sustained losses in previous years because of water shortages or water supply interruption." Id. The handbook further provided that operators who did not provide the required growing environments were ineligible for benefits. See Handbook ¶ 51F, Admin. Rec. at 10.

In this case, the county committee denied the Farm's application based on the definition of controlled environment in the handbook. Because the Farm lost trout due to severe drought, the committee reasoned that the Farm did not have systems and practices in place to ensure the survival of the trout in the event of severe drought. On appeal, the National Appeals

9

Division Hearing Officer found that the committee's determination was erroneous in light of the Farm's twenty-five year history without a loss of trout and that the handbook provision, being stricter than the applicable regulations, did not logically flow from the regulations. On review, the Director of the National Appeals Division reversed the Hearing Officer's determination, holding that the provisions of the handbook were authorized and consistent with the regulatory requirements that aquacultural operators provide a controlled environment and an adequate water supply.

### 3. Review of the decision to deny benefits.

The defendants contend that the decision to deny the Farm's application for benefits was rational and entirely consistent with the applicable regulations. As such, the defendants' motion addresses review pursuant to 5 U.S.C.A. § 706(2)(A), but does not address the other standards under § 706(2), that are alleged in the Farm's complaint. Therefore, for purposes of the present motion, the court's review is limited to § 706(2)(A).

Under § 706(2)(A), the court reviews the agency's decision to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." In that context, "the court may not substitute its judgment for that of

10

agency officials but rather must focus on whether 'the agency[] examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Sistema Universitario Ana G. Mendez v. Riley, 234 F.3d 772, 777 (1st Cir. 2000) (quoting Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). Although the court's review of agency action is deferential, "in order to avoid being deemed arbitrary and capricious, an agency decision must be rational." Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n, 59 F.3d 284, 290 (1st Cir. 1995).

Agency interpretations made pursuant to an express delegation of authority by Congress to the agency to fill a specific statutory gap are binding unless they are "procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." United States v. Mead Corp., 121 S. Ct 2164, 2171 (2001) (citing Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837, 843-44 (1984)). In this case, neither side disputes the deference due the regulations promulgated by the Secretary pursuant to § 824 and codified at 7 C.F.R. Part 1478. Therefore, for purposes of this case, those regulations are deemed to be binding.

The defendants argue that the handbook provisions, on which

11

the decision to deny the Farm benefits was based, are also entitled to deference as the agency's controlling interpretation of the Program.[2] In that regard, the defendants contend that the handbook appropriately defines "controlled environment," used in the regulatory definition of aquaculture, to exclude drought.[3] The Farm contends that the handbook provisions are contrary to the Program's implementing statute, as interpreted by the regulations, and far from being entitled to deference, are grounds for setting aside the defendants' decision. The defendants concede that the regulations include drought within the definition of covered disasters for which aquaculture

---

[2]Since the defendants filed their motion for summary judgment, the standard for assessing deference has been clarified by the Supreme Court in Mead, 121 S. Ct. at 2171-77. Although the defendants filed a reply memorandum, after Mead issued, to further argue the issue of deference, they did not address the Mead analysis.

[3]The record offers no basis to conclude that the handbook was an authorized, authoritative, or persuasive interpretation of the applicable regulations. See Mead Corp., 121 S. Ct. at 2175. In addition, contrary to the handbook definition, the term "controlled environment," when read in context, appears to refer to an environment that allows the reproduction and rearing of specific aquatic species, which were planted or seeded by the operator, and that prevents naturally growing species from entering the aquaculture environment. See 7 C.F.R. §§ 1478.3, 1478.18, & 1437.3. In other words, "controlled environment" appears to focus on the type of aquatic species that is being raised, planted versus naturally occurring, not the ability of the operator to avoid the effects of drought.

12

operators may be eligible to receive benefits and acknowledge that the handbook imposes an "exclusion of drought as a covered peril for aquaculture." Def. Mem. at 13.

Nevertheless, the defendants argue that aquaculture is appropriately excluded from coverage for drought losses based on policy considerations. In support of that theory, the defendants contend that aquaculture operators can avoid the effects of drought with appropriate practices, which is not possible with respect to other weather-related disasters. As a result, the defendants argue, it is appropriate to exclude drought as a covered disaster for aquaculture.

Whatever merit the defendants' novel policy theories may have, those theories are not part of the statutory and regulatory scheme enacted to implement the Program. As such, the defendants' arguments are not material to whether their decision to deny benefits was rational and consistent with the law as it actually exists. The regulations expressly provide that benefits would be available to aquaculture producers who experienced eligible losses caused by drought, while the handbook excludes aquaculture producers who experienced losses caused by drought. Therefore, since the handbook provisions and the defendants' decisions based on those provisions are not in accordance with the regulatory provisions of the Program, the defendants have not

13

shown that they are entitled to summary judgment with respect to review under § 706(2)(A).

Although the record appears to support the Farm's claim under § 706(2)(A), absent a cross-motion for summary judgment from the Farm, the court will not consider summary judgment sua sponte. See Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 643-44 (1st Cir. 2000); Rogan v. Menino, 175 F.3d 75, 79 (1st Cir. 1999).

B. Fifth Amendment Claims

The Farm also alleges in its complaint that the defendants' decision to deny it benefits was discriminatory in violation of the equal protection and due process clauses of the Fifth Amendment. As noted previously, it is not clear what cause of action underlies this claim. The defendants move for summary judgment on the Fifth Amendment claims, contending that their decision did not violate the Fifth Amendment.

With respect to equal protection, the defendants argue that because the Farm is not a member of a protected class, the decision does not offend the Fifth Amendment unless the handbook's exclusion of aquaculture from eligibility for drought relief lacked a rational basis. The defendants argue that the handbook's provisions are rational for the same reasons advanced

14

with respect to § 706(2)(A) review.  Since the defendants were not successful in showing that the handbook was a rational interpretation of the Program's implementing statutes and regulations, they cannot rely on that argument for summary judgment on the Farm's equal protection claim.

The defendants construe the Farm's due process claim to allege that they mistakenly paid benefits to some aquaculture farmers who did not qualify for benefits, constituting arbitrary administration of the Program in violation of due process.  The defendants contend that a due process claim cannot be premised on negligence and that the decision to deny the Farm benefits had a legitimate rational basis.

In response, the Farm continues to lump its equal protection and due process claims together, as a claim for discriminatory application of the Program.  The Farm makes no separate recognizable argument in support of a due process claim, but instead focuses entirely on its equal protection claim.  To the extent the Farm intended to allege a separate due process claim, it appears to have abandoned such a claim in response to summary judgment, and the defendants are entitled to summary judgment with respect to that claim.

<u>Conclusion</u>

For the foregoing reasons, the defendants' motion for summary judgment (document no. 25) is granted as to the plaintiff's Fifth Amendment due process claim and is otherwise denied.  The defendants' motion to strike (document no. 29) is denied without prejudice.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

July 31, 2001

cc:   Brad W. Wilder, Esquire
      T. David Plourde, Esquire

16