L. R. Spooner *vs.* Andrew J. Manchester.

Worcester. Oct. 7, 1880; May 5, 1881. — Sept. 7, 1882. W. Allen & C. Allen, JJ., absent.

A person, who hires a horse of its owner to drive to a particular place, and in returning unintentionally takes the wrong road, and, after travelling on such road a few miles, discovers his mistake and takes what he considers the best way back to the place of hiring, which is by a circuit through another town, is not liable in trover for the conversion of the horse.

Tort. The declaration was as follows: "And the plaintiff says the defendant hired the plaintiff's horse and carriage to drive from Worcester to Clinton and back in a prudent, careful and proper manner, and that the defendant drove the same

beyond Clinton to Northborough wrongfully, and managed and drove said horse so improperly, unskilfully and wrongfully while at said Northborough, that said horse's ankle was broken and otherwise injured, to the great damage of the plaintiff." Answer, a general denial.

At the trial in the Superior Court, before *Dewey,* J., without a jury, it appeared that, on a Sunday in January 1879, the defendant hired a horse of the plaintiff at Worcester to go to Clinton, a town situated twelve miles northerly from Worcester, and return on the evening of the same day; that the defendant drove the horse to Clinton over the road usually travelled between Worcester and Clinton; that he had never been over that road before; that he started with the horse to return from Clinton to Worcester over the same road about nine o'clock in the evening; that, after he had travelled a short distance from Clinton, he unintentionally took the usually travelled road from Clinton to Northborough, a town about ten miles southeasterly from Clinton and about ten miles easterly from Worcester, and not the direct road from Clinton to Worcester, and not on the road usually travelled between those places; that after proceeding five or six miles on said road from Clinton to Northborough beyond where said road diverged from the road to Worcester, he discovered that he was on the wrong road, although he had gone but a mile or two from Clinton before he first thought he was not on the road to Worcester; that, upon discovering that fact, he drove back on said road a short distance, and was informed that it would be the best way from that point to go through Northborough to Worcester; that he then turned round and started towards Worcester through Northborough; and that, when passing round a corner in Northborough, the horse became lame and disabled.

It did not appear that said injury was caused to the horse by any want of due care in the manner he was managing the same at the time of the injury, or that the defendant was not in the exercise of ordinary care when he lost his way.

Upon these facts, the plaintiff contended that he was entitled to recover for said injury to the horse; and the defendant asked the judge to rule that he was not liable for said injury.

The judge ruled the defendant was liable for said injury, and found for the plaintiff; and the defendant alleged exceptions.

The case was argued at the bar in October 1880, and was afterwards submitted on briefs.

*W. S. B. Hopkins*, for the defendant.

*F. T. Blackmer*, (*M. H. Cowden* with him,) for the plaintiff.

FIELD, J. This case apparently falls within the decision in *Hall* v. *Corcoran*, 107 Mass. 251, except that this defendant unintentionally took the wrong road on his return from Clinton to Worcester, and when, after travelling on it five or six miles, he discovered his mistake, he intentionally took what he considered the best way back to Worcester, which was by a circuit through Northborough.

The case has been argued as if it were an action of tort in the nature of trover, and, although the declaration is not strictly in the proper form for such an action, both parties desire that it should be treated as if it were, and we shall so consider it.

As the horse was hired and used on Sunday, and it does not appear that this was done from necessity or charity, and also as it does not appear that the horse was injured in consequence of any want of due care on the part of the defendant, or that the defendant was not in the exercise of ordinary care when he lost his way, the question whether the acts of the defendant amounted to a conversion of the horse to his own use is vital. The distinction between acts of trespass, acts of misfeasance and acts of conversion is often a substantial one. In actions in the nature of trespass or case for misfeasance, the plaintiff recovers only the damages which he has suffered by reason of the wrongful acts of the defendant; but, in actions in the nature of trover, the general rule of damages is the value of the property at the time of the conversion, diminished when, as in this case, the property has been returned to and received by the owner, by the value of the property at the time it was returned, so that after the conversion and until the delivery to the owner the property is absolutely at the risk of the person who has converted it, and he is liable to pay for any depreciation in value, whether that depreciation has been occasioned by his negligence or fault, or by the negligence or fault of any other person, or by inevitable accident or the act of God. *Perham* v. *Coney*, 117 Mass. 102.

The satisfaction by the defendant of a judgment obtained for the full value of the property vests the title to the property in him, by relation, as of the time of the conversion. Conversion is based upon the idea of an assumption by the defendant of a right of property or a right of dominion over the thing converted, which casts upon him all the risks of an owner, and it is therefore not every wrongful intermeddling with, or wrongful asportation or wrongful detention of, personal property, that amounts to a conversion. Acts which themselves imply an assertion of title or of a right of dominion over personal property, such as a sale, letting or destruction of it, amount to a conversion, even although the defendant may have honestly mistaken his rights; but acts which do not in themselves imply an assertion of title, or of a right of dominion over such property, will not sustain an action of trover, unless done with the intention to deprive the owner of it permanently or temporarily, or unless there has been a demand for the property and a neglect or refusal to deliver it, which are evidence of a conversion, because they are evidence that the defendant in withholding it claims the right to withhold it, which is a claim of a right of dominion over it.

In *Spooner* v. *Holmes*, 102 Mass. 503, Mr. Justice Gray says that the action of trover "cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the rightful owner of it, or destroyed the property," and the authorities are there cited. *Fouldes* v. *Willoughby*, 8 M. & W. 540, is a leading case, establishing the necessity, in order to constitute a conversion, of proving an intention to exercise some right or control over the property inconsistent with the right of the lawful owner, when the act done is equivocal in its nature. See also *Simmons* v. *Lillystone*, 8 Exch. 431; *Wilson* v. *McLaughlin*, 107 Mass. 587.

It is argued that the act of the defendant in this case was a user of the horse for his own benefit, inconsistent with the terms of the bailment, and that the defendant's mistake in taking the wrong road was immaterial, and these cases are cited: *Wheelock* v. *Wheelwright*, 5 Mass. 104. *Homer* v. *Thwing*, 3 Pick. 492. *Lucas* v. *Trumbull*, 15 Gray, 306. *Hall* v. *Corcoran, ubi supra*. In each of these cases, there was an intentional act of dominion

·exercised over the horse hired, inconsistent with the right of the ·owner.

In *Wellington* v. *Wentworth*, 8 Met. 548, a cow, going at large ·in the highway without a keeper, joined a drove of cattle, in May or June 1842, without the knowledge of the owner of the drove, and was driven into New Hampshire and pastured there, during the season, with the defendant's cattle, and in the autumn returned with the drove and was delivered to the plaintiff; and it was held that there was no conversion. Chief Justice Shaw says, however, that "it was the plaintiff's own fault that his cow was at large in the highway, and entered the defendant's drove." Yet if the defendant had driven the cow to New Hampshire and pastured her there with his cattle, knowing that she belonged to the plaintiff and intending to deprive him of her, there can be no doubt that it would have been a conversion.

*Parker* v. *Lombard*, 100 Mass. 405, and *Loring* v. *Mulcahy*, 3 Allen, 575, were both decided upon the ground that the defendant neither assumed to dispose of the property as his own, nor intended to withhold the property from the plaintiff.

*Nelson* v. *Whetmore*, 1 Rich. 318, was an action of trover for the conversion of a slave, who was travelling as free in a public conveyance, and was taken as a servant by the defendant; and the decision was, that to constitute a conversion the defendant must have known that he was a slave.

In *Gilmore* v. *Newton*, 9 Allen, 171, the defendant not only exercised dominion over the horse, by holding him as a horse to which he had the title by purchase, but also by letting him to a third person. The defendant actually intended to treat the horse as his own.

If a person wrongfully exercises acts of ownership or of dominion over property under a mistaken view of his rights, the tort, notwithstanding his mistake, may still be a conversion, because he has both claimed and exercised over it the rights of an owner; but whether an act involving the temporary use, control or detention of property implies an assertion of a right of dominion over it, may well depend upon the circumstances of the case and the intention of the person dealing with the property. *Fouldes* v. *Willoughby, ubi supra. Wilson* v. *McLaughlin, ubi*

*supra.   Nelson* v. *Merriam,* 4 Pick. 249.   *Houghton* v. *Butler,* 4 T. R. 364.   *Heald* v. *Carey,* 11 C. B. 977.

In the case at bar, the use made of the horse by the defendant was not of a different kind from that contemplated by the contract between the parties, but the horse was driven by the defendant, on his return to Worcester, a longer distance than was contemplated, and on a different road.   If it be said that the defendant intended to drive the horse where in fact he did drive him, yet he did not intend to violate his contract or to exercise any control over the horse inconsistent with it.   There is no evidence that the defendant was not at all times intending to return the horse to the plaintiff, according to his contract, or that whatever he did was not done for that purpose, or that he ever intended to assume any control or dominion over the horse against the rights of the owner.   After he discovered that he had taken the wrong road, he did what seemed best to him in order to return to Worcester.   Such acts cannot be considered a conversion.

Whether a person who hires a horse to drive from one place to another is not bound to know or ascertain the roads usually travelled between the places, and is not liable for all damages proximately caused by any deviation from the usual ways, need not be considered.

An action on the case for driving a horse beyond the place to which he was hired to go, was apparently known to the common law a long time before the declaration in trover was invented. 21 Edw. IV. 75, pl. 9.                    *Exceptions sustained.*