Shannon ROGAN, Plaintiff,

v.

Thomas MENINO, Individually and as Mayor of Boston; Dennis A. DiMarzio, Individually and as Chief Operating Officer of the City of Boston; Paul F. Evans, Individually and as Police Commissioner of the City of Boston; Robert Colburn, Individually and as a police officer for the City of Boston; John McDonough, Individually and as police Officer for the City of Boston; James McDonough, Assistant General Counsel to the MBTA; Peter Roy; David Albanese; Steven Salisbury, Patrol Officers of the MBTA; and The Massachusetts Bay Transit Authority, Defendants.

Civil Action No. 97–10417–WGY.

United States District Court, D. Massachusetts.

Aug. 19, 1997.

---

Sherman Rogan, Boston, MA, for Shannon Rogan.

Eve A. Piemonte Stacey, Asst. Corp. Counsel, City of Boston Law Dept., Boston, MA, for Thomas Menino, Dennis A. DiMarzio, Paul F. Evans, Robert Colburn, John McDonough.

Edward P. Harrington, MBTA Law Dept., Boston, MA, for James McDonough, Peter

Roy, David Albanese, Steven Salisbury, Massachusetts Bay Transp. Authority.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

Shannon Rogan ("Rogan") commenced this civil rights action against Thomas Menino, Dennis A. DiMarzio, Paul F. Evans, Robert Colburn, and John McDonough (collectively the "City of Boston Defendants"), as well as, James McDonough ("McDonough"), Assistant General Counsel to the Massachusetts Bay Transit Authority ("MBTA"), Peter Roy ("Roy"), David Albanese ("Albanese"), Steven Salisbury ("Salisbury"), unnamed patrol officers of the MBTA, and the MBTA (collectively the "MBTA Defendants") alleging various constitutional and statutory violations. The MBTA Defendants have now moved for judgment on the pleadings.[1]

### I.  Background

The Court gleans the following factual allegations from the Complaint:

On March 15, 1996 Rogan was injured when her vehicle was struck by a green line trolley car near Boston College. After the accident, both Boston police officers and MBTA police officers were dispatched to investigate. According to the Complaint, the MBTA police had primary authority for investigating Rogan's accident. The MBTA police eventually cited Rogan for failure to yield to a trolley and Rogan was required to pay a $50 fine after a hearing in the Brighton District Court.

Rogan has commenced several actions in the Massachusetts Superior Court sitting in and for the County of Suffolk to recover for the personal injuries she suffered as a result of this accident. In the present case, Rogan alleges that the above named City of Boston Defendants and the MBTA Defendants "conspired and maliciously collaborated" in order to "cover-up a probable crime committed by a[n MBTA] employee" thereby "hampering [Rogan's] effective and adequate access to the judicial process." Compl. ¶ 12.

In particular, the Complaint avers that the MBTA has created a special task force called "0700" which is "d[i]spatched by central radio to scenes of serious accidents to investigate, take measurements, photograph and patrol the area as necessary." Id. ¶ 16. Rogan maintains that this "Task Force 0700" places emphasis "on developing evidence to curtail the [MBTA's] liability for damages." Id. ¶ 17. According to the Complaint, McDonough, the Assistant General Counsel to the MBTA, is the head of "Task Force 0700."

Rogan maintains that, in this case, the City of Boston Police Department gave the MBTA the authority to investigate the accident scene. Rogan states that "[t]he custom and routine whereby the [MBTA] is invariably permitted to investigate itself has denied the plaintiff equal treatment under the law." Id. ¶ 47. The Complaint further states that "[a]s a member of a class who have experienced accidents with MBTA vehicles on public ways, Rogan has been deprived of an unbiased and neutral investigator who is without conflict of interest to discover the facts." Id. ¶ 48. Moreover, the Complaint alleges that the citation and subsequent fining of Rogan were part of the "cover-up," evidencing an intent "to divert attention from the [trolley] operator's responsibility for the disaster." Id. ¶ 52. In sum, Rogan asserts that the City of Boston, its police force, and the MBTA "have coordinated their policies and activities and by nonfeasance and bureaucratic avoidance of responsibility have joined in a successful endeavor in effect to create a transient corporation superior to and outside of the law, owing allegiance only to itself and ignoring safety in the interests of its annual financial report and budget." Id. ¶ 57.

The Complaint alleges that the MBTA Defendants violated 42 U.S.C. § 1983, 42 U.S.C. § 1985, the First and Fourteenth Amendments of the United States Constitution, Article IV of the United States Constitution,

---

1. The City of Boston Defendants previously moved to dismiss under Fed.R.Civ.P. 12(b)(6). There, Rogan voluntarily dismissed many of her claims and this Court allowed the motion to the extent that the Complaint alleged a section 1983 violation against the City of Boston Defendants in their individual capacities. Thus, Rogan still has a section 1983 claim against the City of Boston Defendants in their official capacities.

the Massachusetts Civil Rights Act, Mass. Gen. L. ch. 12, §§ 11H, 11I, and Article XI of the Massachusetts Declaration of Rights.[2] Accordingly, Rogan demands five million dollars in the form of "compensation and especially punitive damages [against] the MBTA and its employees ... [because] [t]he scheme effected by task force 0700 to 'cover-up' MBTA negligence amounts to a serious abuse of process." *Id.* ¶ 62.

## II. Discussion

■ The MBTA Defendants have moved pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings. In ruling on a motion for judgment on the pleadings, this Court must evaluate the legal sufficiency of the Complaint pursuant to the same standard used in a Fed.R.Civ.P. 12(b)(6) motion to dismiss. *Furtick v. Medford Housing Authority,* 963 F.Supp. 64, 67 (D.Mass.1997).

### A. 42 U.S.C. § 1983

#### 1. The Individual Defendants

First, the MBTA Defendants maintain that McDonough, Salisbury, Albanese, and Roy are entitled to qualified immunity with respect to Rogan's section 1983 claims. Generally, "government officials performing discretionary functions ... are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The MBTA Defendants maintain that because the MBTA police officers were statutorily empowered to investigate Rogan's accident, *see* 1968 Mass. Acts ch. 664, they should be shielded by qualified immunity for their conduct in doing so. Qualified immunity, however, only protects officials who, while performing their lawful duties, do not violate known constitutional rights.

■ Here, the Complaint alleges that McDonough, Salisbury, Albanese, and Roy engaged in a cover-up of the facts while investigating Rogan's accident. If the MBTA officials did, in fact, actively attempt to conceal the truth about the cause of Rogan's accident, they may have deprived Rogan of some of the civil damages she would otherwise have been entitled to, and, more importantly, caused her wrongly to suffer the penalty of a citation and a $50 fine. In essence, therefore, Rogan is alleging that she was deprived of the right to fair and effective access to the judicial system. Contrary to the MBTA Defendant's assertions, this right was clearly established at the time of Rogan's accident. *See Germany v. Vance,* 868 F.2d 9, 11 (1st Cir.1989) (stating that intentionally withholding exculpatory evidence may violate right to adequate, effective, and meaningful access to courts); *Williams v. City of Boston,* 784 F.2d 430, 435 (1st Cir.1986) (stating that "[a]n official cover-up may violate section 1983 if it deprives the plaintiff of his right to access the courts"); *see also Gonsalves v. City of New Bedford,* 939 F.Supp. 921, 929 (D.Mass.1996) (Wolf, J.) (holding that intentional cover-up "in order to keep civil action from being filed, and if it were filed anyway, from succeeding ... violated federal law"). Accordingly, qualified immunity does not protect the individual MBTA Defendants with respect to the allegations in the Complaint.[3]

The Complaint also purports to allege a section 1983 claim against McDonough in his individual capacity. As the Complaint fails to allege any conduct whatsoever which would give rise to individual liability under section 1983, this Court dismisses any and all section 1983 claims against the MBTA Defendants in their individual capacities.[4]

---

**2.** The MBTA Defendants move only for judgment on the pleadings with respect to the statutory causes of action. Accordingly, although this Court is somewhat skeptical about the constitutional claims, this Court does not address the viability of Rogan's constitutional causes of action.

**3.** Although Rogan has plead sufficiently, in order to actually recover, she will have to show that

she was 1) in fact denied at least some of the damages she would have been entitled to but for the cover-up, or 2) wrongly subjected to the citation and $50 fine.

**4.** It appears from the Complaint that Rogan only alleges an individual claim against McDonough. Nevertheless, this Court concludes that even if Rogan named other MBTA officials in their indi-

## 2. The MBTA

■ Generally, a local government entity such as the MBTA "may not be sued under [section] 1983 for an injury inflicted solely by its employees or agents." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Rather, a governmental entity is liable under section 1983 only when the "government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* In defining what constitutes a custom and policy of a local governmental entity, the Supreme Court has stated "an act performed pursuant to a 'custom' that has *not* been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Board of the County Commissioners of Bryan County v. Brown*, — U.S. ——, ——, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997) (emphasis added).

Here, the MBTA Defendants argue that Rogan may not maintain a section 1983 action against the MBTA because the Complaint fails sufficiently to allege an MBTA custom or policy which would subject it to liability. Rogan's Complaint, however, alleges that the MBTA created a special task force whose sole purpose was to cover-up instances of MBTA wrongdoing. Were this all Rogan alleged, the MBTA would surely be entitled to judgment on the pleadings because, "[a]s [section] 1983 municipal jurisprudence illustrates ... it is not enough for a [section] 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Id.* Rather, Rogan must allege that the MBTA caused her deprivation of federal rights. *See id.*

vidual capacity, the allegations in the Complaint would not sustain such claims.

5. As this is a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c), this Court must take all the allegations in the Complaint as true. It appears that on summary judgment, Rogan may have a difficult time backing these allegations up with factual affidavits.

■ Here, the Complaint does go further than alleging a rogue group of MBTA employees who take it upon themselves to cover-up MBTA wrongdoing. Rogan alleges that this special task force was created by and its activities ratified by the entire MBTA organization for the sole purpose of covering up MBTA wrongdoing. Compl. ¶¶ 16, 17. As part of this institutional cover-up scheme, the Complaint alleges that this task force, with the full blessing of the MBTA hierarchy, fraudulently concealed the truth about Rogan's accident and caused the issuance of a citation and $50 fine in order to "divert attention" away from the truth about her accident. *Id.* at ¶ 52. If true, these allegations establish that through a policy of dispatching the special task force to scenes of MBTA accidents, the MBTA adopted and engaged in a pattern of depriving individuals of their constitutional due process rights.[5] *See Gonsalves*, 939 F.Supp. at 929–30 and cases cited therein.[6] Accordingly, Rogan's section 1983 claim against the MBTA remains viable.

### B. 42 U.S.C. § 1985

In order to state a cause of action under 42 U.S.C. § 1985, the plaintiff must allege "(1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege." *Aulson v. Blanchard*, 83 F.3d 1, 2 (1st Cir.1996) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 [1971]). In addition, a section 1985 plaintiff must allege that the defendant's conduct was motivated by a "class-based, invidiously discriminatory animus." *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798.

6. Once again, with respect to the MBTA, Rogan has sufficiently plead a cause of action. In order to succeed on the merits, however, Rogan will have to show that the MBTA's actions, in participating in cover-ups, deprived Rogan of at least a portion of her rightful civil redress or caused her wrongly to be cited and fined in the Brighton District Court.

■ The First Circuit has stated that in order for a plaintiff to show that she was a member of a cognizable section 1985 class, she must allege that "(1) the defendants conspired against [the plaintiff] because of [her] membership in a class, and (2) the criteria defining the class are invidious." *Aulson,* 83 F.3d at 4 (citing *Hahn v. Sargent,* 523 F.2d 461, 469 [1st Cir.1975], *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 [1976]; *Harrison v. Brooks,* 519 F.2d 1358, 1360 [1st Cir.1975] ). Here, Rogan alleges that the MBTA Defendants engaged in a pattern of activity which denied Rogan, "[a]s a member of a class who have experienced accidents with MBTA vehicles on public ways," of equal treatment under the law. Compl. ¶ 48. Even reading the Complaint in the light most favorable to Rogan, there is nothing even arguably invidious about the criteria defining the class of those who have had accidents with MBTA vehicles. Accordingly, Rogan's section 1985 claim against the MBTA Defendants fails.

### C. Mass. Gen. L. ch. 12, § 11I

■ The Massachusetts Civil Rights Act, Mass. Gen. L. ch. 12, §§ 11H & 11I, creates a cause of action for "[a]ny person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or . . . of the commonwealth, has been interfered with" "by threats, intimidation or coercion." In order to state a valid cause of action under the Massachusetts Civil Rights Act, the plaintiff must allege "actual or potential physical confrontations involving a threat of harm." *Planned Parenthood League of Mass., Inc. v. Blake,* 417 Mass. 467, 473 n. 8, 631 N.E.2d 985, *cert. denied,* 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 122 (1994) (citing *Redgrave v. Boston Symphony Orchestra, Inc.,* 399 Mass. 93, 95, 502 N.E.2d 1375 [1987] ). In this case, Rogan alleges that the MBTA Defendants violated the Massachusetts Civil Rights Act by issuing her a citation and forcing her to pay a $50 fine in an attempt to intimidate her. Compl. ¶ 52. Reading the facts most favorable to Rogan, there is no conceivable way to construe these allegations as instances of "physical confrontations." *See Planned Parenthood,* 417 Mass. at 473 n. 8, 631 N.E.2d 985. According-ly, Rogan fails to state a valid Massachusetts Civil Rights Act claim.

### III. Conclusion

For the forgoing reasons, this Court hereby **DENIES** the motion for judgment on the pleadings with respect to Rogan's section 1983 claim against the individual MBTA Defendants in their official capacities and the MBTA. This Court **GRANTS** the motion for judgment on the pleadings with respect to 1) the section 1983 claim against McDonough in his individual capacity, 2) the section 1985 claim, and 3) the Massachusetts Civil Rights Act claim.

SO ORDERED.