Michael K. KELLEY and Lenore T. Kelley, Plaintiffs, Appellants,

v.

Joseph W. LAFORCE, Robert Fontaine, Melanie A. Jenkins, David Darrin, Richard Chabot, Douglas Blood, Peter Fullam and the Town of North Brookfield, Massachusetts, Defendants, Appellees.

No. 00–2543.

United States Court of Appeals, First Circuit.

Heard Sept. 13, 2001.

Decided Feb. 8, 2002.

Corrected April 26, 2002.

Gary S. Brackett, with whom Brackett & Lucas was on brief, for appellants.

Kenneth H. Anderson, with whom William L. O'Brien, Thomas Drechsler and Finneran, Byrne, Drechsler, & O'Brien, L.L.P. were on brief, for appellees.

Before TORRUELLA and LIPEZ, Circuit Judges, and ZOBEL,* District Judge.

TORRUELLA, Circuit Judge.

This is an appeal from summary judgment entered in favor of defendants-appellees in a civil rights and pendent state tort suit brought by plaintiffs-appellants Michael and Lenore Kelley. Appellants allege that their property interest in a restaurant and liquor establishment, located in the Town of North Brookfield ("Town"), was violated under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H, 11I, by the Town, three Town police officers, two Town officials, the seller of the establishment, and an agent of the seller. In addition, appellants brought state law claims against these same defendants for conversion, intentional interference with prospective advantage and contractual rights, and fraud.

This Court reviews a district court's decision to grant summary judgment de novo. See Abreu–Guzmán v. Ford, 241 F.3d 69, 73 (1st Cir.2001). Because a motion for summary judgment can only be granted when the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law, Fed.R.Civ.P. 56, we examine the facts according to appellants' version of events. See Abreu–Guzmán, 241 F.3d at 73 (stating that evidence must be viewed in light most favorable to non-moving party when reviewing grant of summary judgment). For the reasons given below, we reverse in part and affirm in part.

## I.

Appellant Michael Kelley ("Kelley") entered into a purchase and sale agreement for a restaurant and liquor establishment, Jessica's Pub ("the Pub"), with Joseph LaForce on January 20, 1996. Pursuant to this agreement, Kelley agreed to purchase the Pub for $43,000, conditioned upon the successful transfer of LaForce's liquor license to Kelley. At the same time, Kelley and LaForce also signed a management agreement under which Kelley was to assume all responsibility for managing the Pub. The management agreement included specific conditions that prohibited LaForce

* Of the District of Massachusetts, sitting by designation.

from (1) removing Kelley from his management position, (2) excluding Kelley from the premises, or (3) resuming possession and operation of the business.

Prior to the date of the alleged civil rights violation, Kelley had paid LaForce a sum exceeding $38,000 for the Pub. Additionally, the Kelleys had begun operating the Pub, including hiring employees, purchasing stock and equipment, and paying vendors for the Pub's obligations. Kelley also had entered into a lease agreement for the real estate upon which the Pub was located. Although Kelley had attempted to place the liquor license under his name, he had not succeeded in this effort yet. All of the necessary business licenses for the Pub remained in LaForce's name.

On October 29, 1996, Robert Fontaine, bearing a power of attorney from LaForce that designated Fontaine as the new manager, attempted to take possession of the Pub from Kelley. At the time, Al Mascroft, Kelley's employee, was managing the Pub. Kelley was not at the Pub because he was incarcerated on an unrelated charge.

When Fontaine confronted Mascroft with the power of attorney, Mascroft refused to surrender control of the Pub. As a result, Fontaine sought assistance from the Town's police department. Fontaine informed Chief David Darrin that he had been appointed as the new manager by LaForce, the owner of the Pub, and that an employee, Mascroft, refused to leave after being terminated. Chief Darrin telephoned LaForce, who was then in Florida, to verify his ownership and his wishes regarding the Pub.

Fontaine subsequently returned to the Pub, accompanied by Officer Douglas Blood and Deputy Chief Peter Fullam, and informed Mascroft that he should leave. When Mascroft asked the officers for a court order, they responded by threatening to bring Chief Darrin to arrest him. One of the officers then left, returning shortly thereafter with Chief Darrin.

Chief Darrin told Mascroft that Kelley was having financial problems, was operating the Pub contrary to the liquor license, and that Mascroft should leave. Faced with no alternative, Mascroft left the Pub. Appellants allege that they were thereafter barred from the Pub, under threat of arrest, until January 2, 1997, when the state court issued a preliminary injunction enjoining LaForce and his agents from interfering with Kelley's use and possession of the Pub. Appellants claim that Melanie Jenkins, the Town administrator, and Richard Chabot, Town selectman, authorized the police officers' actions.

After the issuance of the preliminary injunction in state court, the case was removed to the District Court for the District of Massachusetts. On September 7, 1999, the district court denied defendants' motion to vacate the preliminary injunction. On March 13, 2000, the district court granted the defendants' motion for summary judgment, both on the civil rights claims, under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H, 11I, and on the state tort claims. Judgment for defendants Jenkins, Darrin, Chabot, Blood, Fullam, and the Town was entered on November 1, 2000, based on the court's finding that the individual defendants were entitled to qualified immunity and that the Town could not be held liable under § 1983 or the MCRA. The district court dismissed the case as to defendants LaForce and Fontaine because they were not served and never entered an appearance. Plaintiffs-appellants appeal only the summary judgment, and not the dismissal as to

LaForce and Fontaine.[1]

## II.

Section 1983 provides a cause of action for a plaintiff to seek money damages from a defendant who acted under color of state law to deprive plaintiff of a right guaranteed by the Constitution or by federal law. *See* 42 U.S.C. § 1983; *Camilo-Robles v. Hoyos*, 151 F.3d 1, 5 (1st Cir.1998). In this case, appellants bring a § 1983 claim against both individual defendants (Town officers and officials) and the Town itself. Since a different standard is used to determine liability for individual and municipal defendants, we will discuss the § 1983 claims against these two sets of defendants separately.

### A. Qualified Immunity

■ Although government officials are subject to suit for federal constitutional or statutory violations under § 1983, they are generally shielded from civil damages liability under the principle of qualified immunity so long as their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In practice, this means that "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal quotation marks omitted).

■ A court evaluating a claim of qualified immunity must engage in a two-step inquiry. *See Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (setting forth an order of analysis for qualified immunity); *Abreu-Guzmán*, 241 F.3d at 73 (recognizing Supreme Court's "preferred method of analysis" for qualified immunity). First, the court must determine whether plaintiff has alleged a deprivation of a constitutional or federal right by the defendant official. *See Abreu-Guzmán*, 241 F.3d at 73; *Camilo-Robles*, 151 F.3d at 6. If so, the court must "determine whether that right was clearly established at the time of the [official's] alleged violation." *Wilson*, 526 U.S. at 609, 119 S.Ct. 1692 (quoting *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)) (internal quotation marks omitted). Only after both these questions are answered affirmatively should the court address "the particular conduct in question," *Abreu-Guzmán*, 241 F.3d at 73, to decide whether an objectively reasonable official would have believed that his conduct was lawful "in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct," *McBride v. Taylor*, 924 F.2d 386, 389 (1st Cir.1991).

As the Supreme Court has explained, "[t]his order of procedure is designed to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit. Deciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609, 119 S.Ct. 1692 (citations omitted).

---

1. Thus, for the purposes of this opinion, when we collectively refer to "defendants" or "appellees," we are referring to Chabot, Jenkins, Darrin, Fullam, Blood, and the Town, but not LaForce or Fontaine.

Here, however, the district court failed to consider the first part of the qualified immunity analysis that the Supreme Court laid out in *Wilson*. It never determined whether appellants had alleged a violation of a "clearly established" right. *See* 526 U.S. at 609, 119 S.Ct. 1692; *Abreu-Guzmán*, 241 F.3d at 73. Instead, the court stated that even if appellants were able to show a due process violation, the defendants still would be protected by qualified immunity because their actions were reasonable in light of their belief that La-Force owned the Pub. "That belief was reasonable," the court concluded, "because LaForce was the holder of the liquor license under which the Pub operated. La-Force represented to the police that Fontaine was to be the new manager and thus, the officers reasonably believed that they were evicting a terminated employee at the direction of an absentee employer, not confiscating property interests."

■ A determination of objective reasonableness "will often require examination of the information possessed" by the defendant officials. *Anderson*, 483 U.S. at 641, 107 S.Ct. 3034 (explaining that objective reasonableness assessment may include examination of the facts known to defendant, but not defendant's subjective intent); *see also Abreu-Guzmán*, 241 F.3d at 74–75 (discussing facts known to police which provided basis for probable cause, thereby making plaintiff's arrest objectively reasonable); *Swain v. Spinney*, 117 F.3d 1, 9–10 (1st Cir.1997) (noting that the objective reasonableness inquiry is "highly

fact specific"). Although "[w]e recognize that the immunity question should be resolved, where possible, in advance of trial," pre-trial resolution sometimes will be impossible because of a dispute as to material facts. *Swain*, 117 F.3d at 10. In such a case, the factual issues must be decided by the trier of fact,[2] thereby precluding summary judgment. *See id.* Only after the facts have been settled can the court determine whether the actions were objectively reasonable so as to fall under the qualified immunity umbrella. *See id.*

■ This is such a case. The district court concluded that the officers believed that LaForce owned the Pub and, further, that such a belief was reasonable in light of the information the officers possessed at the time of their allegedly unlawful conduct. However, appellants claim that the Town police officers knew of the Kelleys' ownership interest in the Pub. In their opposition to defendants' motion for summary judgment, appellants offered several pieces of evidence to support this claim. First, the Pub is located directly across the street from the police station, in a town populated by only 4,300 people and six bars, so the police would have had occasion to notice that Kelley had been running the pub. Second, Town police reports referred to Kelley as being either the owner or manager of the Pub, or both. Chief Darrin reviewed these reports. Third, Deputy Chief Fullam testified in his deposition that he believed Kelley was either the owner of the Pub or was in the process of buying the Pub.[3]

2. We have previously noted that the Supreme Court has not clearly indicated whether the judge may act as fact-finder when there is a factual dispute underlying the qualified immunity defense or whether this function must be fulfilled by a jury. *See St. Hilaire v. City of Laconia*, 71 F.3d 20, 24 n. 1 (1st Cir.1995). In any event, when facts are in dispute, " 'we doubt the Supreme Court intended this dis-

pute to be resolved from the bench by fiat.' " *Id.* (quoting *Prokey v. Watkins*, 942 F.2d 67, 72 (1st Cir.1991)).

3. Appellants also offered evidence to indicate that even if the officers did not have actual knowledge of Kelley's ownership interest, a reasonable inquiry by the officers would have revealed such property interest. Kelley had

On the other hand, appellees claim that they had no knowledge of Kelley's ownership interest in the Pub. They believed Mascroft to be an employee of the owner LaForce and that Mascroft was being terminated pursuant to the power of attorney granted to Fontaine. Therefore, the police claim that they were merely assisting Fontaine in evicting a trespassing terminated employee, rather than confiscating any property interest.

To support this allegation, appellees, in their motion for summary judgment, offered evidence to show that the officers did not have any knowledge of Kelley's ownership interest in the Pub. First, the liquor license to the Pub remained in LaForce's name, since Kelley's license application had been denied. Although Kelley also filed a petition with the licensing board for change of manager, naming himself as the Pub's manager, this did not demonstrate any property interest in the Pub. Second, Chief Darrin verified LaForce's ownership interest in the Pub when he telephoned LaForce in Florida.

Thus, when the district court was deciding the appellees' summary judgment motion, the court faced a factual dispute as to whether the officers knew of Kelley's ownership interest in the Pub. This factual dispute is material because it determines whether the police were knowingly confiscating Kelley's property or whether they believed they were evicting a terminated employee. The district court, however, did not consider the appellants' evidence as to the officers' knowledge and found that the police had a reasonable belief that LaForce was the owner, based upon his holding of the liquor license. As a result, the district court found that the officers acted in an objectively reasonable manner and were thus entitled to qualified immunity.

We hold that the district court erred in granting summary judgment in favor of the appellees on that basis. The reasonableness of the officers' conduct, in this case, turns on the officers' knowledge. If the police knew that Kelley was the owner of the Pub, then their action might have amounted to a confiscation of property without any process.[4] However, if the police reasonably believed LaForce to be the owner, then their action might not have been unreasonable.[5] In sum, assuming,

signed a sale agreement with LaForce, which specifically prohibited LaForce from resuming control of the Pub. In addition, Kelley had entered into a real estate lease for the property on which the Pub was located. The officers, however, made only a one-sided inquiry by calling LaForce to verify his ownership before seizing the property. Appellants argue that such a limited inquiry to determine the legal owner was objectively unreasonable in light of clearly established law, given that there was no emergency situation and the proper method for resolving property disputes is through the courts. Although the district court did not address this argument directly, its conclusion that the officers' belief that LaForce owned the Pub was "reasonable" suggests that it rejected the notion that a more thorough inquiry was required. Given our conclusion that a genuine factual dispute exists as to what the police actually knew, we

need not resolve the question whether their belief (whatever it was) was reasonable.

4. It is unclear exactly which constitutional right appellants believe was violated. In their opposition to defendants' motion for summary judgment, appellants allege that their Fourteenth Amendment procedural and substantive due process rights were violated. However, appellants' brief asserts that the seizure of the Pub was in violation of the Fourth Amendment. Because the district court did not reach the issue of whether there was a constitutional violation, we decline to address its merits. For the sake of clarity, we have omitted any references to appellants' Fourth Amendment claim, and proceeded as if they have alleged only a violation of their due process rights.

5. As noted, we decline to decide whether the officers, if they lacked knowledge of Kelley's

but not deciding, that the appellants adequately alleged a violation of a clearly established due process right, the district court was faced with a material factual dispute as to whether the defendants' conduct was reasonable so as to entitle them to immunity. This factual dispute needed to be resolved by a trier of fact and was an inappropriate matter for summary judgment. *See Swain*, 117 F.3d at 10.

Therefore, as to the grant of summary judgment in favor of Chief Darrin, Deputy Chief Fullam, and Officer Blood, we reverse and remand for proceedings consistent with this opinion.

■ The district court also granted summary judgment in favor of defendants Jenkins and Chabot, two Town officials, after finding that they were entitled to qualified immunity for the same reasons as the police officers. Since appellants do not challenge the court's finding of qualified immunity for these officials in their brief, this issue is deemed waived. *See United States v. Sacko*, 247 F.3d 21, 24 (1st Cir. 2001) ("It is well-settled that arguments not raised in appellant's initial brief are waived.").

## B. Municipal Liability

■ Appellants further appeal the district court's grant of summary judgment in favor of the Town. The district court determined that appellants failed to establish municipal liability on either of their two proffered theories: (1) that the defendant Town officials or officers had final policy-making authority; and (2) there was an official Town policy of inadequate training or supervision. Appellants only challenge the rejection of the first theory on this appeal. Because we agree with the district court's determination that appellants have not offered sufficient evidence to al-

low a jury to find that the Town officers or officials had final policy-making authority, we affirm the court's grant of summary judgment in favor of the Town on the § 1983 claim.

■ It is well established that municipalities may be sued under § 1983 only in limited circumstances. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In other words, a municipality cannot be held liable under § 1983 for the actions of its employees based solely on a theory of *respondeat superior. See id.* at 691, 98 S.Ct. 2018. Rather, liability can be imposed on a local government only where that government's policy or custom is responsible for causing the constitutional violation or injury. *See id.* at 690–91, 98 S.Ct. 2018.

■ Government policy or custom, though, may be established by "a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Thus, "where action is directed by those who establish governmental policy," the municipality may be held liable for that action under § 1983. *Id.* at 481, 106 S.Ct. 1292. However, liability of the municipality under such circumstances will only attach where the "decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481, 106 S.Ct. 1292 (plurality opinion).

---

ownership interest, acted reasonably, since this is not necessary to our decision.

■ On appeal, appellants allege that it was error for the district court to decide on summary judgment that Chief Darrin's actions did not constitute actions of a policy-making official for purposes of the Town's liability.[6] Appellants cite to *Pembaur* for the proposition that a county sheriff has final policy-making authority in law enforcement so as to attribute his actions to the municipality.

Although *Pembaur* did hold that action of the county sheriff might constitute municipal policy based upon state law, *see* 475 U.S. at 484–85, 106 S.Ct. 1292, appellants here have not offered any support for their allegation that Chief Darrin has such final policy-making authority under Massachusetts law. In fact, appellants' complaint asserts that the Town administrator, Jenkins, authorized Kelley's ejection from the Pub. This claim effectively undermines the argument that Chief Darrin has final policy-making authority with respect to the action in question. Without any evidence of Chief Darrin's policy-making authority, the district court correctly concluded that the alleged constitutional violation in this case was not caused by a municipal policy or custom. Therefore, summary judgment in favor of the Town is appropriate as a matter of law.

### III.

Appellants further appeal the district court's grant of summary judgment for the defendants on their civil rights claim under the MCRA, Mass. Gen. Laws ch. 12, §§ 11H, 11I. Determining that § 1983 and the MCRA are "parallel statutes" involving similar analyses, the district court held that the Town officers and Town officials were entitled to qualified immunity under the MCRA for the same reasons they were entitled to qualified immunity under § 1983. The court also held that the Town itself could not be held liable under the MCRA for lack of an official policy in violation of the constitution or federal law.

The MCRA provides a cause of action for any person whose rights under the Constitution, federal law, or state law have been interfered with by threats, intimidation, or coercion of another. *See* Mass. Gen. Laws ch. 12, §§ 11H, 11I. The Supreme Judicial Court of Massachusetts has interpreted the MCRA to be co-extensive with § 1983 except for two disparities: (1) the MCRA does not require any state action (i.e., there is no "under color of state law" requirement), and (2) a claim under the MCRA requires a violation by threats, intimidation, or coercion. *See Duca v. Martins,* 941 F.Supp. 1281, 1294 (D.Mass.1996); *Duarte v. Healy,* 405 Mass. 43, 537 N.E.2d 1230, 1232 (Mass. 1989).

■ The same qualified immunity standard that applies under § 1983 has also been held to apply to claims under the MCRA. *See Duarte,* 537 N.E.2d at 1232. Therefore, a state official cannot be held liable under the MCRA for discretionary official actions that violate (federal or state) constitutional or statutory rights unless those rights were clearly established at the time of the violation and the official's actions were objectively unreasonable. *See id.* at 1232–33.

Because we determined that the Town police officers were not entitled to summary judgment on qualified immunity under § 1983, we also find that summary

---

6. Although appellants had originally claimed that defendants Chabot, Jenkins, Chief Darrin, and Deputy Chief Fullam were all policy-making officials for purposes of municipal liability, appellants only renew this argument in their brief as to Chief Darrin. Therefore, the argument that Chabot, Jenkins, and Fullam are policy-making officials is waived because it was not raised in appellants' brief. *See Sacko,* 247 F.3d at 24.

judgment for the officers is inappropriate under the MCRA. Therefore, we reverse the district court's grant of summary judgment in favor of the officers on the MCRA claim, and remand for a determination as to whether the officers are entitled to qualified immunity under the analysis set forth above.[7]

As appellants do not challenge the district court's grant of summary judgment for the Town officials, Jenkins and Chabot, on the MCRA claim[8] in their brief, any appeal on this issue is waived. *See Sacko,* 247 F.3d at 24.

■■■ In addition, because we determined under our § 1983 analysis that appellants failed to present any evidence of a Town policy or custom, we affirm the district court's grant of summary judgment for the Town on the MCRA claim.[9]

## IV.

Appellants further appeal the district court's grant of summary judgment in favor of defendants on the three state tort claims. We also review these claims de novo, viewing the facts in the light most favorable to appellants. *See Abreu–Guzmán,* 241 F.3d at 73.

### A. Conversion

Appellants allege that the Town officers and officials acted jointly with Fontaine to intentionally deprive appellants of their personal property in the Pub, which included inventory of alcohol and food, equipment, and cash. Moreover, appellants were precluded from recovering this property because the defendants caused or permitted the locks of the Pub to be changed.

In their motion for summary judgment, the Town officers and officials argued that they were entitled to summary judgment as a matter of law because there were no facts to support a finding that they exercised any "dominion or control" over any of the appellants' chattel. The district court, agreeing with defendants, granted summary judgment in their favor.

■■■ The tort of conversion requires an intentional or wrongful exercise of dominion or control over personal property of another by one with no right to immediate possession. *See Third Nat'l Bank v. Continental Ins. Co.,* 388 Mass. 240, 446 N.E.2d 380, 383 (Mass.1983); Restatement

---

7. We note that if the district court decides, on remand, that the officers are not protected by qualified immunity, then the court will also have to determine whether appellants have offered sufficient evidence of threats, intimidation, or coercion so as to make out a claim under the MCRA. *See Columbus v. Biggio,* 76 F.Supp.2d 43, 54 (D.Mass.1999) (dismissing claim under MCRA for failure to allege that constitutional deprivations were brought about by threats, intimidation, or coercion); *Cignetti v. Healy,* 89 F.Supp.2d 106, 125 (D.Mass.2000) (examining alleged "threat" objectively); *Rogan v. Menino,* 973 F.Supp. 72, 77 (D.Mass.1997) (dismissing MCRA claim for failure to allege " 'actual or potential physical confrontations involving a threat of harm' " (quoting *Planned Parenthood League of Mass., Inc. v. Blake,* 417 Mass. 467, 631 N.E.2d 985, 989 n. 8 (Mass.1994))).

8. Appellants' brief, in appealing the grant of summary judgment on the MCRA claim, simply incorporates the arguments set forth challenging the summary judgment on the § 1983 claim. Since appellants did not challenge the district court's finding of qualified immunity under § 1983 for Chabot and Jenkins, as mentioned in Section II above, there is no argument appealing the MCRA claim to incorporate.

9. The Town is also entitled to summary judgment on the MCRA claim because under Massachusetts law a municipality cannot be sued under the MCRA. *See Howcroft v. City of Peabody,* 51 Mass.App.Ct. 573, 747 N.E.2d 729, 744 (Mass.App.Ct.2001) (concluding that, unlike § 1983, a municipality is not a "person" within the terms of the MCRA).

(Second) of Torts § 222A (1965). An action for conversion " 'cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the rightful owner of it, or destroyed the property.' " *Grande v. PFL Life Ins. Co.,* No. 9663, 2000 WL 1476676, at *4 (Mass.App.Div. Sept.27, 2000) (quoting *Spooner v. Manchester,* 133 Mass. 270, 273 (1882)). It is no defense to conversion for defendant to claim that he acted in good faith, reasonably believing that he had a legal right to possession of the goods. *See Kelly v. Dubrow,* No. 1313, 2001 WL 287490, at *3 (Mass.App.Div. Mar.20, 2001).

■ According to the facts alleged by appellants, the Town officers, acting upon authorization from Jenkins and Chabot, assisted Fontaine in retaking possession of the Pub (and the personal property located therein) on behalf of LaForce. Appellants further allege that the defendants caused or permitted the locks to be changed on the Pub and that LaForce and/or Fontaine appropriated appellants' chattel for their own use.

■ Although defendants may not have acted with the intent to appropriate the appellants' personal property for themselves, appellants offered evidence to show that the defendants acted with intent to deprive the alleged owners of their property. Under Massachusetts law, intentional deprivation of property from the rightful owner is sufficient to demonstrate "dominion or control." *See Grande,* 2000 WL 1476676, at *4 (finding that defendant did not exercise any "wrongful control" of insurance payments because it did not at-

tempt to appropriate them from plaintiff); *Spooner v. Manchester,* 133 Mass. 270, 273 (1882). Moreover, even if defendants believed they were just putting the Pub and the personal property back into possession of the rightful owner, this is no defense. *See Kelly,* 2001 WL 287490, at *3. Defendants have still exercised "the rights of an owner" by depriving appellants of their property. *Spooner,* 133 Mass. at 273.

The defendants concede in their motion for summary judgment that a cause of action for conversion should lie against LaForce and Fontaine because they were given control of the Pub (and therefore the personal property within it) by the Town police. Delivery of the Pub and the chattel therein to LaForce and Fontaine, though, may constitute an exercise of control by the police because the act of wresting control from appellants was itself an act of "dominion or control." [10]

Thus, we find that the appellants have presented evidence to support a claim for conversion which, in light of the factual dispute, makes summary judgment for the individual defendants inappropriate. We therefore reverse the district court's grant of summary judgment for defendants Darrin, Fullam, Blood, Chabot, and Jenkins.

■ As for the Town, however, appellants have not presented any evidence to show that the Town was complicit in the alleged conversion. Moreover, a municipality enjoys governmental immunity for intentional torts under the Massachusetts Tort Claims Act. *See* Mass. Gen. Laws Ann. ch. 258, § 10(c) (governmental immunity is retained for "any claim arising out of an intentional tort, including assault,

---

10. If appellants' allegation that Chabot and Jenkins authorized Mascroft's eviction is true, then Chabot and Jenkins could also be complicit in the conversion. *See Refrigeration Discount Corp. v. Catino,* 330 Mass. 230, 112

N.E.2d 790, 793 (Mass.1953) ("All parties engaged in committing a conversion of the goods of another may be held jointly or severally for the wrong.").

battery, false imprisonment, ... misrepresentation, deceit, ... interference with advantageous relations or interference with contractual relations"); *Howcroft,* 747 N.E.2d at 747; *Rezendes–Walsh v. City of Boston,* No. Civ. A. 95–3707–E, 1996 WL 679673, at * 2 (Mass.Super.Nov.25, 1996). Conversion, even though not enumerated in § 10(c), is an intentional tort, thereby barring appellants' claim against the Town. *See Rezendes–Walsh,* 1996 WL 679673, at * 2 (noting that the Supreme Judicial Court of Massachusetts has found § 10(c)'s list of intentional torts to be illustrative, rather than exhaustive). As a result, we affirm the district court's grant of summary judgment for the Town on the claim of conversion.

## B. Intentional Interference with Contractual Rights

Appellants further allege that defendants are liable for intentional interference with appellants' contractual rights. The district court, concluding that LaForce, rather than defendants, caused the disintegration of the contractual relationship, granted summary judgment in favor of defendants.

 To state a claim for intentional interference with a contract, the plaintiff must prove that: (1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's conduct was for an improper purpose or by improper means; and (4) the plaintiff was harmed by the defendant's actions. *See United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 551 N.E.2d 20, 21, 23 (Mass.1990); *Jenkins v. DeTucci,* 41 Mass. App.Ct. 176, 668 N.E.2d 1345, 1350 (Mass. App.Ct.1996). As the district court prop-

erly found, even if we make all inferences in favor of the non-moving party for summary judgment, the appellants have not alleged facts to support the requisite element that defendants knowingly induced the third party to breach the contract. Rather, appellants have claimed the contrary: that LaForce intended to reclaim the Pub, in violation of their agreement, and that he requested the police to assist him in this endeavor. Thus, the defendants did not induce LaForce to breach the contract, but *LaForce induced the defendants* to breach his own contract. A party to a contract cannot be held liable for intentional interference with that contract. *See Harrison v. NetCentric Corp.,* 433 Mass. 465, 744 N.E.2d 622, 632 (Mass. 2001).

 Therefore, since appellants failed to present evidence that would support a claim for intentional interference with contractual rights, we affirm the district court's grant of summary judgment in favor of all of the defendants.[11]

## C. Fraud

 Appellants contend that the defendants are also liable for fraud because the defendants falsely represented that they had the authority to remove appellants and appellants' agent from the Pub. To establish a prima facie case of fraud, a plaintiff must present evidence that: (1) the defendants made a false representation of material fact; (2) defendants knew of its falsity; (3) the representation was made for purposes of inducing the plaintiff to act upon it; and (4) the plaintiff relied upon its supposed truth to his detriment. *See Barrett Assocs., Inc. v. Aronson,* 346 Mass. 150, 190 N.E.2d 867, 868

11. We note that summary judgment for the Town was appropriate for the additional reason that the claim of intentional interference with contractual rights against the Town is barred by the Massachusetts Tort Claims Act. *See* Mass. Gen. Laws. Ann. ch. 258, § 10(c).

(Mass.1963). The district court, finding that the officers were not acting to gain an advantage and that Mascroft did not rely on the defendants' representations as true, granted summary judgment for the defendants.

Appellants allege that the officers, by stating that they would arrest Mascroft if he refused to vacate the Pub, indicated that they had authority to force Mascroft to leave. However, if appellants' allegations are true, the defendants did not possess the authority to evict Mascroft because they knew appellants were the legitimate owners of the Pub. Thus, the police made a false statement with knowledge of its falsity. The officers allegedly threatened to arrest Mascroft for the very purpose of forcing him to leave, and Mascroft eventually did so, fearing arrest.

Appellees, and the district court, argue that Mascroft, the plaintiffs' agent, did not rely on the officers' representation of authority as true because Mascroft initially resisted their order to leave the Pub. Rather, Mascroft asked the officers for a court order. Only after the police indicated that a court order was unnecessary did Mascroft agree to leave. Whether Mascroft left because he believed that the officers, without a court order, could arrest him for failure to vacate the premises or whether he left voluntarily, even though he knew a court order was required, seems to be a question of fact, which should be determined by the fact-finder, rather than resolved by the court on summary judgment.

■ The district court also found that appellants' fraud claim was meritless because appellants did not allege that the officers were acting to gain an advantage. Acting to gain an advantage, however, is not an element of fraud. *See Commonwealth v. O'Brien,* 305 Mass. 393, 26 N.E.2d 235, 238 (Mass.1940) (defining fraud as "any artifice whereby he who practices it gains, or attempts to gain, some undue advantage to himself, *or* to work some wrong or do some injury to another" by making a false representation (emphasis added)). Thus, failure to offer evidence that the officers were acting for their own advantage is an insufficient ground for granting summary judgment in favor of defendants.

■ Accordingly, viewing the evidence in the light most favorable to appellants, we find that appellants have offered sufficient evidence of fraud for their claim to be heard by a fact-finder. Thus, we reverse the district court's grant of summary judgment for the individual defendants on this claim and remand for proceedings consistent with this opinion. As for the municipality, we affirm the district court's grant of summary judgment for the Town because the Town is not liable for intentional torts of employees under a *respondeat superior* theory of liability. *See Howcroft,* 747 N.E.2d at 747; *Nardone v. Cambridge Hosp.,* No. 9600998, 1998 WL 1181149, at *2–3 (Mass.Super.Oct.20, 1998).

## V.

For the reasons stated above, we **affirm in part** and **reverse in part, remanding** this case to the district court for further proceedings.