Shannon ROGAN, Plaintiff, Appellant,

v.

Thomas M. MENINO, etc., et al.,
Defendants, Appellees.

No. 98–1531.

United States Court of Appeals,
First Circuit.

Heard April 7, 1999.

Decided April 29, 1999.

Sherman Rogan for appellant.

John J. Cloherty, III, and Eve A. Piemonte Stacey, Assistant Corporation Counsel, City of Boston, with whom Merita A. Hopkins, Corporation Counsel, was on brief, for appellees.

Before TORRUELLA, Chief Judge, SELYA and LYNCH, Circuit Judges.

SELYA, Circuit Judge.

This appeal stems from a traffic accident that occurred in Boston, Massachusetts. It illustrates once again the dangers that lurk when busy trial courts, struggling to manage crowded dockets, do· not turn square corners. The tale follows.

## I

On March 15, 1996, a motor vehicle operated by plaintiff-appellant Shannon Rogan collided with a trolley car operated under the auspices of the Massachusetts Bay Transportation Authority (the MBTA). The MBTA has its own police force, *see* Act of July 18, 1968, ch. 664, 1968 Mass. Acts 547 (creating a separate police force to function within the MBTA's territorial authority and investing its officers with powers equivalent to those of municipal police officers), and that complement shares jurisdiction over certain matters with the Boston Police Department (the BPD). In this instance, officers from both entities converged on the accident scene. Pursuant to departmental policy, the BPD officers, John McDonough and Robert Colburn, relinquished control of the investigation to their MBTA counterparts.

Displeased with the results of the investigation, Rogan sued Thomas Menino (Mayor of Boston), Paul Evans (Boston's police commissioner), Dennis DiMarzio

(Boston's chief of operations), and the two responding officers in federal district court.[1] Her complaint limned a plethora of claims—but Rogan voluntarily discontinued most of them, and only one remnant is relevant here. Invoking 42 U.S.C. § 1983, Rogan asserted that the five City of Boston/BPD defendants, jointly and severally, hindered her access to the courts vis-à-vis her accident-related claim for personal injuries and property damage. The defendants were liable, Rogan theorized, because by abdicating responsibility for investigation of the accident they had aided and abetted the MBTA's attempts to cover up the trolley driver's negligence. McDonough's and Colburn's supposed liability rested on their refusal to take control of the investigation, whereas the other defendants' supposed liability related to their roles in promulgating and enforcing a policy of relinquishing jurisdiction over accidents involving MBTA carriers to MBTA police.

The district court disposed of these claims in two stages. First, acting on the defendants' motion, *see* Fed.R.Civ.P. 12(b)(6), it dismissed all claims against Menino, Evans, and DiMarzio in their individual capacities.[2] Nearly a year later, at the final pretrial conference, the court, acting on its own initiative, brought closure to the suit by entering summary judgment in favor of Evans and DiMarzio in their official capacities and in favor of McDonough and Colburn. Rogan now appeals both the dismissal of her individual-capacity claims against Evans and DiMarzio and the subsequent entry of a sua sponte summary judgment. We address each aspect of her appeal in turn.

## II

■ It is axiomatic that the liability of persons sued in their individual capacities

under section 1983 must be gauged in terms of their own actions. *See Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Camilo–Robles v. Zapata,* 175 F.3d 41 (1st Cir.1999) (*Camilo–Robles II*). In dismissing the claims against Evans and DiMarzio in their individual capacities, the district court concluded that the complaint utterly failed to link either defendant to the alleged conspiracy to deprive Rogan of meaningful access to the courts. We review this decision de novo, scrutinizing the complaint in the light most favorable to the plaintiff. *See Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). In that process, we—like the *nisi prius* court—must give credence to all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of liability. *See id.* We stop short, however, of "swallow[ing] the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." *Id.* (citing, *inter alia, Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990)). If, on that basis, the factual averments do not justify recovery on some theory adumbrated in the complaint, then—and only then—can we affirm a dismissal for failure to state an actionable claim. *See Leatherman v. Tarrant County N.I. & C. Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

■ We agree with the district court that the instant complaint encompasses no set of facts that entitles Rogan to relief against either Evans or DiMarzio, individually. Charitably construed, the complaint

---

1. Rogan's complaint also named as defendants the MBTA and several MBTA employees. Her claims against these defendants have been dismissed by stipulation (apparently in connection with a negotiated settlement) and we make no further mention of them.

2. Rogan subsequently amended her complaint and dropped her official-capacity claims against Mayor Menino. She does not now contest the district court's dismissal of her individual-capacity claims against the Mayor, and we have no occasion to consider this ruling.

predicates liability on the theory that BPD personnel collogued with MBTA personnel to conceal the negligence of the trolley car driver, thus inhibiting Rogan's right to sue the MBTA for damages. Yet, the complaint does not allege (or even insinuate) that either Evans or DiMarzio directly participated in the actions that purportedly violated Rogan's rights. Rather, the complaint suggests some sort of supervisory liability. To state a cognizable claim on that basis, Rogan needed to depict a scenario that would permit a fact-based inference that Evans and DiMarzio were guilty of "conduct that amount[ed] to condonation or tacit authorization" of wrongdoing. *Camilo–Robles II*, 175 F.3d at 44 (collecting cases); *see also Camilo–Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir.1998) (*Camilo–Robles I*) (explaining that supervisory liability requires proof of an affirmative link sufficient to show causation). To a significant extent, the existence of such conduct depends on the presence or absence of notice. *See Camilo–Robles II*, 175 F.3d at 47; *Camilo–Robles I*, 151 F.3d at 7. Rogan, however, alleges no facts from which a rational reader might infer that Evans or DiMarzio knew (or had any basis for knowing) that MBTA police officers were skewing investigations to minimize MBTA liability.

On appeal, Rogan attempts to confess and avoid. She admits the lack of any averments suggesting notice, but asks us to infer from Evans's and DiMarzio's awareness of the transfer policy a corresponding awareness of the allegedly unconstitutional execution of that policy. The inference is much too strained. The BPD's policy of ceding jurisdiction to the MBTA is undoubtedly constitutional on its face—after all, there is no constitutional prohibition against organizational schemes that lodge self-investigative powers within a government agency, *cf. Withrow v. Larkin*, 421 U.S. 35, 52, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (rejecting the proposition that "agency members who participate in an investigation are disqualified from adjudicating")—and mere knowledge of the transfer policy's existence therefore cannot serve as a proxy for notice of its unconstitutional implementation.

We have said enough on this score. Since Rogan failed to plead any facts sufficient to support an inference that Evans and DiMarzio had notice that MBTA police officers were wielding investigative powers in a way that threatened to deprive accident victims of their civil rights, she failed to state a claim for deliberate indifference against these defendants, individually. *See Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988) (explaining that, to survive a motion to dismiss under Rule 12(b)(6), a complaint must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery"). Consequently, we affirm the district court's dismissal of the individual-capacity claims against Evans and DiMarzio.

### III

When it jettisoned the claims brought against Evans and DiMarzio in their individual capacities, the district court kept alive Rogan's official-capacity claims against these same defendants, treating those as claims against the City of Boston. *See Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). The court also refused to dismiss the claims against McDonough and Colburn, reasoning that the complaint could be read to allege that they knew MBTA officers would not investigate the accident impartially.

At the final pretrial conference, *see* Fed. R.Civ.P. 16, the court demanded that Rogan marshal all the evidence at her disposal to defeat summary judgment. She attempted to comply with this directive, but the court found her proffer inadequate. Declaring that no reasonable jury could find for Rogan on the adduced evidence, the court, acting sua sponte, entered summary judgment in the defendants' favor on

all remaining claims. Rogan assigns error.

■ It is apodictic that trial courts have the power to grant summary judgment sua sponte. *See Berkovitz v. HBO, Inc.,* 89 F.3d 24, 29 (1st Cir.1996). Withal, that power is not unbridled. To protect against erosion of the fairness principles embedded in Fed.R.Civ.P. 56, a court tempted to grant an unbesought summary judgment must hew to Rule 56's procedural strictures. *See Stella v. Town of Tewksbury,* 4 F.3d 53, 56 (1st Cir.1993). Thus, before the court can seriously consider sua sponte summary judgment, two conditions precedent must be satisfied: (1) the case must be sufficiently advanced in terms of pretrial discovery for the summary judgment target to know what evidence likely can be mustered, and (2) the target must have received appropriate notice. *See Leyva v. On The Beach, Inc.,* 171 F.3d 717, 719 (1st Cir.1999); *Berkovitz,* 89 F.3d at 29; *Stella,* 4 F.3d at 55. Notice, in this context, has two aspects: the summary judgment target is entitled to know both the grounds that the district court will consider and the point at which her obligation to bring forth evidence supporting the elements of her claim accrues. *See Berkovitz,* 89 F.3d at 31.

Inasmuch as the lower court made its sua sponte ruling at the final pretrial conference, with discovery complete (or nearly so), the first condition precedent clearly was satisfied here. It is more problematic whether the court fulfilled the second condition. On one hand, the docket sheet reflects that no outstanding motion to dismiss or motion for summary judgment was extant when the court acted; the transcript of the penultimate pretrial conference intimates no warning of the court's intention to consider terminating the case at the final pretrial conference; nothing in the procedural order entered by the court preliminary to the final pretrial conference directed the parties to prepare for a hearing on dispositive motions; and there is no other record of a written notice that dispositive motions would be entertained at that conference. On the other hand, the defendants have proffered a statement, signed by the district judge pursuant to Fed. R.App. P. 10(c), which indicates that the court had in fact notified the parties during an unreported chambers conference (presumably held in connection with the penultimate pretrial conference) that "pursuant to Fed.R.Civ.P. 16, [it might] dismiss any or all of the defendants" at the final pretrial conference. Moreover, the defendants submitted several affidavits on the day before the final pretrial conference, presumably in anticipation that the court would consider terminating the case then and there.

■ This Rule 10(c) statement arrives on our doorstep in a peculiar manner. In *haec verba,* Rule 10(c) permits only an appellant, not an appellee, to prepare a statement summarizing what transpired at an unreported proceeding.[3] Here, the appellees prepared the statement, served it on the appellant, and convinced the district court, over the appellant's objection, to approve it. On that basis, the statement's legitimacy might well have been open to question had Rogan asked this court, by motion or in her appellate brief, to strike it. Because Rogan has not mounted such a protest in this venue, we treat any doubts about the statement's provenance as waived, and we leave for another day the intriguing question whether Rule

---

**3.** The rule states:

    If the transcript of a hearing or trial is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement must be served on the appellee, who may serve objections or proposed amendments within 10 days after being served. The statement and any objections or proposed amendments must then be submitted to the district court for settlement and approval. As settled and approved, the statement must be included by the district clerk in the record on appeal.

    Fed. R.App. P. 10(c).

10(c)'s reference to "the appellant" must be construed literally.

■ Apart from this procedural obstacle, the statement commands our respect. If Rule 10(c) is to be more than a hollow promise, a court of appeals must accept a district court's reconstruction of what transpired at an unrecorded conference or similar proceeding unless some basis exists for believing that the trial court's account is patently unreasonable or deliberately false. *See United States v. Keskey*, 863 F.2d 474, 478 (7th Cir.1988); *cf. United States v. Serrano*, 870 F.2d 1, 12 (1st Cir.1989) (applying this standard in the Fed. R.App. P. 10(e) context). Rogan makes no plausible accusation of unreasonableness or falsification, and the record reveals no basis for such a charge. Hence, we accept the Rule 10(c) statement at face value.

■ Even so, the mere announcement that the court might dismiss the defendants at the final pretrial conference falls well short of the *specific* notice to which parties are entitled under Fed.R.Civ.P. 56. In the first place, Rule 56 obliges the moving party to inform the nonmovant of the grounds for the motion by "identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). As far as the record in this case reveals, Rogan never received specific advance warning of this kind from either the defendants or the court.

■ In the second place, once the movant articulates his rationale for *brevis* disposition and submits the documentation (if any) on which he relies, Rule 56(c) in terms entitles the summary judgment tar-

get to no less than ten days within which to prepare a defense to the motion. This requirement persists even when the trial court aspires to grant summary judgment on its own initiative. *See Stella*, 4 F.3d at 56; *see also* 11 James Wm. Moore et al., Moore's Federal Practice § 56.10[2][b] (3d ed.1997). Here, however, the defendants filed several affidavits on the day before the final pretrial conference, and the court considered them without affording Rogan the benefit of the ten-day window that Rule 56 envisions. In doing so, the court erred. *Accord Massey v. Congress Life Ins. Co.*, 116 F.3d 1414, 1417–18 (11th Cir. 1997) (reversing sua sponte summary judgment for failure to comply with Rule 56's ten-day notice requirement).

■ That the district court acted under the auspices of Fed.R.Civ.P. 16 provides no cover. To be sure, Rule 16 permits a court to dispose of marginal claims or issues that do not warrant a full-dress trial. *See* Fed.R.Civ.P. 16(c)(1) (authorizing district courts to "take appropriate action, with respect to ... the elimination of frivolous claims or defenses" at pretrial conferences). Nevertheless, when the district court employs summary judgment as the vehicle for the elimination of such detritus, Rule 16 does not trump the procedural prophylaxis of Rule 56. *See Stella*, 4 F.3d at 56. Without advance notice of the basis of a looming dismissal, a targeted party lacks a "meaningful opportunity to cull the best evidence supporting his position, and to present that evidence, together with developed legal argumentation, in opposition to the entry of summary judgment." *Berkovitz*, 89 F.3d at 31. And where, as here, the summary judgment loser was never afforded such an opportunity, sua sponte summary judgment cannot stand.[4] *See id.* at 29 (holding that the trial court must provide a targeted party with

---

4. The appellees insist that, whatever procedural irregularities may have occurred, we should sustain the judgment because Rogan lacks the ammunition necessary to deflect summary judgment. That assessment may be

true—but it is beside the point at this juncture. The issue here is one of process and fundamental fairness, not one of substance. *See Leyva*, 171 F.3d at 719.

an "adequate opportunity to dodge the bullet" before entering sua sponte summary judgment).

## IV

We need go no further. The district court properly dismissed the claims that Rogan brought against Evans and DiMarzio, individually, and to that extent we affirm the judgment below. However, despite our repeated calls for caution in the use of sua sponte summary judgments, *see, e.g., Leyva,* 171 F.3d at 719; *Jardines Bacata, Ltd. v. Diaz–Marquez,* 878 F.2d 1555, 1560–61 (1st Cir.1989), the court below acted too hastily in dispatching the other claims in this case. Thus, we vacate the remainder of the judgment and remand for further proceedings in the district court.[5] We take no view of the merit (or lack of merit) of Rogan's case.

*Affirmed in part, vacated in part, and remanded. All parties to bear their own costs.*

5. We anticipate that the court, among other things, will address Rogan's motion to compel further answers to interrogatories (which it denied as moot after it had granted summary judgment sua sponte).