# United States Court of Appeals
## For the First Circuit

No. 00-1828

SHANNON ROGAN,

Plaintiff, Appellant,

v.

CITY OF BOSTON ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Torruella and Selya, Circuit Judges,

and Lisi,* District Judge.

Sherman Rogan on brief for appellant.
    Merita A. Hopkins, Corporation Counsel, and Eve A. Piemonte
Stacey, Assistant Corporation Counsel, on brief for appellees.

October 5, 2001

_____

**SELYA, Circuit Judge.** On March 15, 1996, plaintiff-appellant Shannon Rogan suffered serious personal injuries when a motor vehicle she was driving collided with a trolley car operated under the auspices of the Massachusetts Bay Transportation Authority (MBTA). We canvassed the pertinent facts on an earlier occasion, see Rogan v. Menino, 175 F.3d 75, 76-77 (1st Cir. 1999) (Rogan II), and it would be pleonastic to rehearse them here. For the purpose at hand, it suffices to note that, immediately following the accident, officers from both the MBTA and the City of Boston converged on the scene.[1] Pursuant to an unofficial departmental policy, the Boston police officers, John McDonough and Robert Colburn, relinquished control of the investigation to the MBTA.

In due course, an MBTA police officer cited the plaintiff for failure to yield. Believing the citation to be unfounded, the plaintiff sought judicial review. A state district judge found her responsible for failing to yield. The plaintiff eschewed a further appeal, instead paying a $50 fine.

---

[1]The MBTA has its own police and shares jurisdiction over certain matters with the Boston police department. See Act of July 19, 1968, ch. 664, 1968 Mass. Acts 547 (creating a separate police force to function with the MBTA's territorial authority and investing its officers with powers equivalent to those of municipal police officers).

That was not the end of the matter.  Invoking 42 U.S.C. § 1983, the plaintiff sued a multitude of defendants — the two responding officers (McDonough and Colburn), the City of Boston, three municipal officials, the MBTA, and several MBTA employees — in the federal district court.  She claimed, inter alia, that McDonough, Colburn, and the municipal officials had impaired her access to the courts when they ceded control of the investigation to the MBTA (which, she averred, had a financial interest in the outcome of the investigation and shaped its findings accordingly).

The plaintiff eventually settled her state-court tort suit against the MBTA and, as part of the settlement, dismissed the MBTA defendants from this action.  The district court disposed of the plaintiff's claims against the remaining defendants in stages.  First, the court, acting on a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), dismissed all individual-capacity claims against the mayor (Menino), the police commissioner (Evans), and a third municipal official (DiMarzio).  Rogan v. Menino, 973 F. Supp. 72, 77 (D. Mass. 1997) (Rogan I).  The plaintiff then dropped her official-capacity claims against Mayor Menino.  Finally, the district court, acting on its own initiative, entered summary judgment adverse to the plaintiff on the remainder of the claims.

-4-

The plaintiff appealed both the Rule 12(b)(6) order and the sua sponte summary judgment. This court upheld the dismissal of the individual-capacity claims, but vacated the grant of summary judgment on procedural grounds. Rogan II, 175 F.3d at 81. On remand, the remaining defendants — McDonough, Colburn, and the City of Boston — formally moved for summary judgment, see Fed. R. Civ. P. 56(c), and the district court granted the motion. This appeal followed.

We review the district court's entry of summary judgment de novo, construing the record and all reasonable inferences therefrom in favor of the nonmoving party (here, the plaintiff). N. Am. Specialty Ins. Co. v. Lapalme, 258 F.3d 35, 37 (1st Cir. 2001). We keep firmly in mind that summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Summary judgment practice has its own rhythm. Where, as here, the initiators are the defendants, they must begin the movement by averring the absence of any evidence sufficient to support some necessary element of the plaintiff's case. Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st

Cir. 1994). To avoid summary judgment, the plaintiff then must sound a contrapuntal note, pointing to evidence in the record sufficient to establish the existence of a "genuine" issue of "material" fact anent the disputed element(s). Id. A genuine issue exists if the record evidence is such that a reasonable factfinder could resolve it either way. Id. A fact is material if its existence vel non "affects the outcome of the suit" so that it "needs to be resolved before the related legal issues can be decided." Id. (citation and internal punctuation omitted).

Summary judgment motions are decided on the record as it stands, not on the pleadings or on the nonmovant's vision of what facts might some day be unearthed by the litigation equivalent of an archeological dig. Consequently, a plaintiff who aspires to ward off a properly documented motion for summary judgment must produce enough proof to enable her case to get to a jury. Perez v. Volvo Car Corp., 247 F.3d 303, 313 (1st Cir. 2001). This obligation cannot be satisfied by conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative. Maldonado-Denis, 23 F.3d at 581; Medina-Munoz v. R.J. Reynolds Tobacco Corp., 896 F.2d 5, 8 (1st Cir. 1990).

-6-

Against this backdrop, we turn to the plaintiff's claims. The statute under which she sues, 42 U.S.C. § 1983, provides in pertinent part that "every person who, under color of a statute, ordinance, regulation, custom, or usage . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." In other words, section 1983 "supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law." Evans v. Avery, 100 F.3d 1033, 1036 (1st Cir. 1996).

To maintain such a cause of action, the plaintiff — who has the burden of proof — first must show official conduct, that is, an act or omission undertaken under color of state law. Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 253 (1st Cir. 1996). That is not a problem here; the municipal defendants plainly were acting under color of Massachusetts law. But the plaintiff also must show that the defendants' acts or omissions caused a constitutional injury. Rogan's case founders on this shoal. We explain briefly.

To satisfy the "constitutional injury" requirement, the plaintiff must make a showing of a deprivation of a federally-

secured right.  Baker v. McCollan, 443 U.S. 137, 142 (1979); Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001).  It is the law of the case that the policy of transferring accidents involving MBTA vehicles to the MBTA police is not, in and of itself, unconstitutional.  Rogan II, 175 F.3d at 78 (declaring that "there is no constitutional prohibition against organizational schemes that lodge self-investigative powers within a government agency").  This leaves the plaintiff, on her pleadings, with two possible avenues of attack.

The most obvious avenue would be to show an unconstitutional implementation of the transfer policy.  See City of Canton v. Harris, 489 U.S. 378, 386-87 (1989) (concluding that, under certain circumstances, a policy that is constitutional on its face may be applied in an unconstitutional manner, thus implicating section 1983).  Here, however, the plaintiff makes only a token effort to travel this road.  She offers no significantly probative evidence that the MBTA officers deliberately skewed their investigation, let alone that the municipal defendants knew (or had reason to believe) that such a charade would occur.

The plaintiff pursues the second avenue with more vigor:  she endeavors to make the requisite showing of constitutional injury based on a denial of meaningful access to

-8-

the courts.  Theoretically, she is on solid ground.  There is a constitutional right of access to the courts.  See Wolff v. McDonnell, 418 U.S. 539, 579 (1974); Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649, 660 (1st Cir. 1997).  It follows, therefore, that "[i]t can be a deprivation of life, liberty, or property, without due process of law, in violation of the Fourteenth Amendment, for state officials to deny a person adequate, effective, and meaningful access to the courts." Germany v. Vance, 868 F.2d 9, 11 (1st Cir. 1989) (citation and internal quotation marks omitted).  But theory is one thing and reality is quite another.  As a practical matter, the plaintiff's effort to limn a denial of access to the courts falls short.

The plaintiff's thesis is not easily extracted from the harsh rhetoric and tangled ratiocination that permeates her brief.  As best we can tell, her argument seems to be that the defendants are liable because they shifted responsibility for the accident investigation to the MBTA police who, she theorizes, had a conflict of interest which led them to conduct a biased investigation and cover up the real cause of the accident (the trolley driver's negligence).  This conflict of interest, the plaintiff says, arises out of the mutual employment of the MBTA police and the trolley car operator,

presumably on the basis that, if the trolley driver were held responsible for the accident, the MBTA would be exposed to financial risk (i.e., money damages). In this way, the municipal defendants allegedly deprived the plaintiff of an impartial investigation, and, thus, of meaningful access to the judicial process (including an opportunity to obtain more generous recompense in her tort action).

This thesis has several flaws. The perceived link between the investigation and the plaintiff's tort suit seems tenuous at best, especially since under Massachusetts law, the plaintiff's conviction on the failure-to-yield charge would not have been admissible in evidence in a trial of that suit. See LePage v. Bumila, 407 Mass. 163, 164-65 (Mass. 1990) (holding that the payment of a fine pursuant to a traffic citation does not constitute an evidentiary admission). Moreover, the plaintiff, in fact, was able to pursue her personal injury claim, and she received a substantial settlement ($710,000). We need not belabor these points, however, because the summary judgment record contains no evidence whatsoever that the MBTA investigation was partial or that the municipal defendants had any reason to suspect that it would be. To cinch matters, the record reveals a similar dearth of evidence that any MBTA investigations were marked by partiality, or that the

defendants, based on their experience, were on notice that the MBTA had played fast and loose on prior occasions (or would do so on this occasion).

To bridge these chasmal gaps, the plaintiff baldly asserts that the MBTA's financial interest in the outcome of the investigation somehow creates a presumption of partiality. She is wrong. Accusations of bias are not self-elucidating. Thus, a plaintiff who alleges a pattern and practice of partiality must, when faced with a motion for summary judgment, offer some significantly probative evidence to support that charge. Indeed, in situations in which a presumption exists, the presumption is that government officials are <u>impartial</u> in the administration of responsibilities arising within the scope of their employment.[2]  <u>See</u> <u>Withrow</u> v. <u>Larkin</u>, 421 U.S. 35, 47 (1975); <u>United States</u> v. <u>Morgan</u>, 313 U.S. 409, 421 (1941); <u>Brasslett</u> v. <u>Cota</u>, 761 F.2d 827, 837 (1st Cir. 1985). Were the law otherwise, federal agencies would be hamstrung whenever they

_____

[2]In support of her contention that partiality may be presumed without proof, the plaintiff cites <u>Ward</u> v. <u>Vill. of Monroeville</u>, 409 U.S. 57 (1972). That case bears on the neutrality of officials performing judicial or quasi-judicial functions. <u>See</u> <u>id.</u> at 59-60. The plaintiff's claim of institutional bias on the part of the MBTA investigators presents a significantly different problem. <u>Ward</u> is, therefore, inapposite. <u>See</u> <u>Doolin Sec. Sav. Bank</u> v. <u>FDIC</u>, 53 F.3d 1395, 1405-07 (4th Cir. 1995); <u>Hammond</u> v. <u>Baldwin</u>, 866 F.2d 172, 177 (6th Cir. 1989).

-11-

had reason to investigate crimes against the United States or tort claims involving federal employees.

The plaintiff's cause is not aided by her denunciatory charge that the citation issued by the MBTA for failure to yield was "intended to provide leverage to diminish her claim for damages." Appellant's Br. at 15. That is rank conjecture. As the plaintiff provides us with no evidence to support the accusation, it can play no role in the summary judgment calculus.[3] See Maldonado-Denis, 23 F.3d at 581; Medina-Munoz, 896 F.2d at 8.

The short of it is that the plaintiff has mustered no proof that the MBTA's investigation was anything less than pristine on this (or any other comparable) occasion. By the same token, she has adduced no evidence to show that the municipal defendants knew, or had reason to know, of any irregularity in the MBTA's discharge of its investigatory functions. These deficits are fatal. See, e.g., Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001) (warning that a plaintiff who opposes summary judgment but fails to marshal evidence in support of her position has little

---

[3]At any rate, the undisputed evidence that a state court judge, unaffiliated with the MBTA, found the plaintiff guilty of failure to yield tends to contradict the notion that the MBTA officers issued the citation for an improper purpose.

prospect of success); <u>Kelly</u> v. <u>United States</u>, 924 F.2d 355, 358-59 (1st Cir. 1991) (similar).

We need go no further.[4]  Here, as in <u>Maldonado-Denis</u>, 23 F.3d at 586, "[a]lthough the rhetoric of [constitutional injury] reverberates from the pages of [the plaintiff's] brief[s], the record contains no evidence of [a violation] sufficient to relate the rhetoric to the reality of events." Since the plaintiff failed to present any proof of a constitutional injury, the district court did not err in granting the defendants' motion for brevis disposition.

**Affirmed**.

---

[4]The absence of a constitutional injury suffices to doom the plaintiff's claim, rendering it unnecessary for us to consider the other formidable obstacles (e.g., qualified immunity) that block her path.