**Mark BLAIR–CORRALES Plaintiff**

v.

**MARINE ENGINEERS' BENEFICIAL ASSOCIATION (MEBA)**
**Defendant**

**No. CIV. 03–1422CCC.**

United States District Court, D. Puerto Rico.

Feb. 28, 2005.

24

Diana L. Pagán–Rosado, Grover G. Hankins, Houston, TX, Nichelle Williams, for Plaintiff.

Gary H. Montilla–Brogan, Richard W. Gibson, Tessie Leal–Garabis, for Defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This action, for breach of the duty of fair representation due to racial and national origin discrimination, is before us on two motions for summary judgement: Defendant union Marine Engineer's Beneficial Association's ( Union) Motion for Summary Judgment (docket entry 35) is opposed by plaintiff Mark Blair Corrales'

(Corrales), which also contains a cross motion for summary judgment (docket entry 36). The Union filed an opposition to the cross motion for summary judgment (docket entry 39).

The facts which give rise to this complaint are as follows: plaintiff is a non-white male of Mexican descent who, beginning about November 1, 1999, was employed in a temporary position as a port crane maintenance engineer by CSX World Crane Services, LLC and CSX Lines, LLC (alternately referred to as CSX, the Company, or the Employer). After working approximately eighteen months in the temporary position, the Company notified Corrales, around March 1, 2001, that his employment would not be further extended. Shortly thereafter, the company hired John Cleveland, a white union member, allegedly for the temporary position, but he was immediately given permanency.

Plaintiff alleges that he had repeatedly told both his immediate supervisor Robert Toner, the Company's Port Supervisor in Puerto Rico, and Kevin Murphy the Senior Port Engineer for the Atlantic, Gulf and Caribbean, who was Toner's supervisor, that he was interested in a permanent position. He further contends that they promised him that he was in line for the next available permanent position as a port crane engineer, but they failed to give it to him allegedly for the discriminatory reasons.[1]

In his letter dated February 28, 2001, Corrales complained to Paul Krupa, Atlantic Coast Vice President for the Union, setting out the allegations of his grievance for discrimination by the Company in failing to give him a permanent position. On

[1]. Corrales also identifies another white male, Ted Novasad, who was transferred to a permanent port engineer's position outside of Puerto Rico about two weeks after plaintiff arrived here. Corrales did not apply for that position, however [docket # 36 Ex 16 p. 72].

August 28, 2001 Krupa responded to plaintiff's letter,[2] indicating that he had "interviewed [Corrales'] former supervisor Bob Toner, senior port engineer Kevin Murphy, as well as management representatives Stan Wisniewski, Ted Daly and Tony Horn," and that he had not found evidence of discrimination in regard to the hiring and layoff procedures for plaintiff's temporary job. Krupa also stated that the Union would not pursue this grievance further. It is this letter from Krupa rejecting further action on his grievance that plaintiff identifies as the act of discrimination based on race and national origin that motivated the a breach of the duty of fair representation.

After complying with the administrative requirements, on January 21, 2002 Corrales filed an action, *Mark Blair Corrales v. CSX Lines, LLC and CSX World Crane Services,* LLC Civil No. 02–1151(JP), against his employer, alleging the Company's discriminatory conduct and claiming damages for its failure to give him a permanent position. That suit ended with a settlement agreement between Corrales and the Company and a judgment of dismissal was entered on July 29, 2003.

Corrales again completed the required administrative proceedings with the Equal Employment Opportunity Commission (EEOC) and filed this suit against his Union for breach of duty of fair representation by failing to pursue his grievance for discriminatory reasons.

The Court, in its order of January 27, 2004 (docket entry 17) dismissed Corrales' first and third causes of action based on the expiration of the statute of limitations applicable to his breach of duty of fair representation claim under § 301 of the Labor Management Relations Act. The order granted him a term of ten days after notice in which to amend his complaint to eliminate the allegations related to the § 301 claim and re-plead only the Law 100 and Title VII claims, and only on the theory present in the EEOC claims and intimated in the original complaint; that is, that the Union's breach of duty of fair representation was motivated by discrimination based on race and national origin.

Plaintiff filed his amended complaint on February 12, 2004 (docket entry 19). It incorporates most of the facts in the original complaint and adds, among other things, at paragraph 44: "Paul Krupa, the officer who promised to follow the grievance procedures, was secretly hostile to Plaintiff because of his race and national origin."

It is against this history that we now turn to the summary judgment motions before us. The Union argues that Corrales' dismissal with prejudice of his action against CSX is a decision on the merits of the allegation of the Company's discrimination in failing to give Corrales a permanent position. The Union argues that Corrales' prior action against his employer bars the case against the Union by collateral estoppel because the issue of the Company's discrimination, which has already been disposed of, is the underlying factor in this case. Therefore, the Union contends, plaintiff cannot re-litigate the issue of the company's alleged discrimination against him in this case. Among the cases movant cites to support this rule of law, it identifies *DiPinto v. Lodge No.8 Fraternal Order of Police,* 9 F.3d 2, 3 (1st

---

**2.** In plaintiff's deposition of May 20, 2004, at page 59, he refers to a letter drafted for him by fellow union member William Doyle, who is also a lawyer, which was sent to Krupa some time in August, 2001. It is this letter, plaintiff alleges, that elicited Krupa's response. We do not find this letter in our record. William Doyle, long after the facts of this case, became the Union's Legal Representative.

Cir.1993), as a case directly on point. *Di-Pinto*, however, is distinguishable from the case before us. There the Circuit Court found that the officers had had a full and fair opportunity in state court to litigate against the City all the issues which they later raised in the federal action. Since the state court had entered a final judgment on the merits, they were precluded from later re-litigating the same claims.

In the situation before us, the stipulation for dismissal with prejudice in Cv. 02–1151(JP) of the claims against the CSX specifically states, at paragraph two, that

Defendants firmly and categorically deny all facts alleged in the Complaint. Furthermore, Defendants affirmatively state they reached the aforementioned Agreement solely to avoid incurring in additional costs, expenses and attorneys fees related to the litigation of the above captioned matter.

■ Thus, the issue of the Company's discrimination toward plaintiff on the basis of his race and national origin was never decided on the merits. Settlements do not ordinarily create issue preclusion, also called collateral estoppel, unless it is clear that the parties intend their agreement to have such an effect. *Arizona v. California*, 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000). It is the general rule that issue preclusion attaches only when an issue of fact or law is actually litigated and determined by a valid and final judgment. In the case of a judgment entered by consent, none of the issues are actually litigated. *Id.* Therefore, defendants' theory of collateral estoppel does not dispose of this action.

■ Title VII of the Civil Rights Act 42 U.S.C. § 2000e–2(c) makes it "unlawful for a labor organization to … discriminate against any individual because of his race, color, religion, sex or national origin." In order to prove that the Union breached its duty to fairly represent Corrales by refusing to further process his grievance against CSX because of his race and national origin, Corrales must prove all of the following essential elements by a preponderance of the evidence: (1) that defendant Union intentionally discriminated against him by breaching its duty of representing him fairly in processing his grievance; (2) that Corrales' race and national origin were motivating factors in the Union's decision not to pursue it beyond the steps described by Krupa in his August 28, 2001 letter; and (3) that plaintiff suffered damages as a result of that decision.

■ We must first revisit the issue of whether CSX discriminated against Corrales, the finding of evidence of discrimination against the Company being a prerequisite to the discrimination claim against the Union. *DiPinto, supra*, at 4 (a claim for breach of a Union's duty of fair representation cannot succeed absent a showing that the underlying action against the employer was meritorious). The facts set out in the complaint state a prima facie claim against the Company: Corrales is a non-white crane engineer of Mexican origin; he was not given a permanent position for which he believes he qualified and to which he alleges that he was entitled; the position was given to a white male; and, as a result of not getting the job he suffered damages.

■ As noted in our earlier opinion, a review of the case law does not demonstrate that an independent finding of breach of duty of fair representation under Section 301 is a prerequisite for the filing of the Title VII claim. Therefore, this factual issue is still alive. If the proven facts demonstrate that both the Employer failed to hire him for discriminatory motives and the Union failed to adequately pursue his grievance, in order to prove his

Title VII claim Corrales must then prove by a preponderance of the evidence that the Union's failure to act was motivated by his race and national origin.

We now turn to the undisputed evidence submitted by the parties in support of their motions:

In his EEOC charges against CSX, Corrales identifies supervisor Murphy and Toner as the individuals who caused his harm by failing to keep their repeated promises to give him a permanent position with the Company. In his first amended complaint (docket entry 19), at paragraphs 16–21, Corrales describes Murphy as the supervisor who had the hiring authority, but qualifies the description by stating that Murphy would follow the recommendation of Toner, who was plaintiff's immediate supervisor and who was himself supervised by Murphy.

In his EEOC charge brought as a prerequisite to this action, the only specific allegation made against the Union reads as follows:

I complained about my failure to be assigned a permanent position and my subsequent removal. I was advised that my grievance would not be pursued. I was notified of this by a letter from Mr. Paul Krupa, former Atlantic Coast Vice President which was dated August 28, 2001.

It is my belief that the Union has processed grievances filed by White persons under similar circumstances, yet they failed to represent me.

The August 28, 2001 letter to which plaintiff refers mentions actions taken by Krupa in his investigation of the grievance and concludes that he has not found evidence of discrimination in relation to Corrales' hiring and layoff. He also states

that the Union will not pursue the grievance further.

Paragraph 38 of the amended complaint essentially alleges the contents of the grievance. The factual allegations finish with paragraph 44, which states: "Paul Krupa, the officer who promised to follow the grievance procedures, was secretly hostile to Plaintiff because of his race and national origin."

We note from the above that the only direct allegations of discrimination against CSX are made as to Toner and Murphy, and, as to the Union, the only actor identified is Krupa. The only person he could identify as making any derogatory ethnic comments was Toner, who "just made a few Mexican jokes, Latin lover type deals, in more explicit words." [P. 103.] [3] In other incidents described to support plaintiff's claims, the actor is also alleged to be Toner, the company supervisor.

At his May 29, 2004 deposition, plaintiff states that it was Toner and Murphy of CSX who led him to believe that he was in line for a permanent position, that Toner was his immediate supervisor and Murphy was Toner's boss [pp. 18–20]. He clarified that the reason he is suing the Union is because it failed to represent him on his claim against CSX [p. 33]. He also stated that his complaint against the Union is based on Krupa's past conduct that affected him and that other officials to whom plaintiff sent courtesy copies of his February 28, 2001 letter should have taken an interest in the matter [pp. 35–36].

Plaintiff states that he believes that in cases similar to his, the Union has processed the grievances for white Union members. With regard to "similar" incidents identified by the parties, the record reveals the following individuals and their situations:

---

**3.** All cites are to plaintiff's deposition of May 29, 2004, unless otherwise noted.

An example given by plaintiff is that of Tom Chiacchia. Chiacchia is identified as a white crane engineer who was already occupying a permanent position when Corrales arrived in San Juan to work at CSX [p. 124, see also, p. 140]. At some point in time Chiacchia had been absent on extended leave due to a work-related arm injury. The issue he grieved was whether he had recovered from his injury enough to return to his job. The Union processed his grievance on this issue and Chiacchia was reinstated in his permanent position. Aside from the fact that Chiacchia is also a port crane engineer, the facts of his grievance in no way resemble those of Corrales.

Corrales gives more examples, some of which are supported by his co-worker Marvin Morales' deposition excerpts. These are apparently submitted to demonstrate other incidents of national origin discrimination by the company against Corrales and others. In his deposition of February 19, 2003,[4] Morales also refers, however, to favorable union action on his behalf. With regard to his own employment, he states that Toner kicked him off the schedule because he did not know how to speak English and, therefore, could not communicate with the supervisors. Morales later learned that Bob Galante, a union representative substituting for the vacationing union ports agent, had intervened on his behalf. He was then reinstated to the schedule and not discharged, the credit for which he gives to the union's assistance. [Morales' deposition, pp. 33–37.] While Morales' testimony may demonstrate a discriminatory attitude on the part of the Employer, it works against Corrales' discrimination allegation against the Union.

The Union has identified the grievance it considers most similar to Corrales': that of Chris Dresser, a **white** temporary port crane engineer who believed that the Company should make him permanent because he had served over ninety days in a temporary position and had not been officially terminated. With regard to Dresser's grievance, Corrales did not know if the grievance procedure had been completed, [p. 143], was not aware of any arbitration hearings conducted in Dresser's case, [p. 156] and admitted that he had no involvement in Dresser's grievance [p. 144]. In the affidavit in support of summary judgment of William P. Doyle, the Legal Representative for the Union, Doyle states at page 6 that the Union informed Dresser by letter that his grievance was without merit. Accordingly, Dresser's grievance did not proceed to arbitration.[5]

Although plaintiff did admit that Dresser, a similarly situated white employee, was not made a permanent port engineer and that his grievance lacked merit, and did not proceed to arbitration, he dismisses the equality of the union's action in their cases despite Dresser's white Anglo origins, claiming that, he believed that "a bunch of research was done on [Dresser's] behalf," more than what was done in his case his because he saw a packet provided by the Union's attorney to his counsel *at the deposition* contained "a bunch of letters."

In answering the Union's questions at his deposition regarding paragraph 44 of his amended complaint related to Krupa's hostility, Corrales responded as follows:

Q: Why do you think that Paul Krupa was hostile to you because of your race and national origin?

A: Because he didn't follow up on my case. He has produced papers that ap-

---

4. Taken in the Cv. 02–1151 case.

5. The affidavit also states that Dresser's other grievances were denied.

pear to be drawn up after the fact that he was in the hot seat. This is a direct hit on me.[5]

.      .      .      .      .

Q: Again, other than the fact that Krupa did not respond in the way you wanted him to your February 28, 2001 letter, why do you conclude that he was hostile to you because of your race and national origin?

A: Because there is a good old boys system going on over there. It has been going on for years. Everybody knows it. And it has got to stop.[6]

With further regard to Krupa's animus, however, Corrales stated in his deposition as follows. He had previously worked with Krupa in the early 1990s on the ship SS CORPUS CHRISTI and they got along well; there was no hostility toward the plaintiff, it was a professional relationship with no negative interaction [p. 100]; he had no further contact with Krupa from 1993 until February 2001, when the issues in this case arose [p.100]; Corrales never heard any racial or ethnic slurs from Krupa or any other Union officers [p.101]; the only contact that Corrales had with Krupa regarding the investigation was one face-to-face conversation; he also gave Krupa two letters, but did not send him a list of witnesses to whom Krupa should talk [122–123].

■■■ In order to defeat a Motion for Summary Judgment, the party opposing it must present definite, competent evidence to rebut the motion. *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir.2000). A plaintiff who aspires to ward off a properly documented summary judgment motion must produce enough proof to enable his case to get to a jury. *Rogan v. City of Boston*, 267 F.3d 24, 27

(1st Cir.2001). This obligation cannot be satisfied by conclusory allegations, empty rhetoric, unsupported speculation or evidence which, in aggregate, is less than significantly probative. *Id.* In other words, conjectural allegations, conclusory assertions and inconsequential evidence are insufficient to meet the opposing party's burden in defeating a motion for summary judgment. *R.R. Isla Verde Hotel Corp. v. Howard Johnson International,* 2005 WL 147932, 2* (1st Cir. January 25, 2005).

■■■ Corrales has failed to provide any evidence that demonstrates that the Union discriminated against him because of his race and/or national origin. He acknowledged that the August 28, 2001 letter from Paul Krupa forms the basis for his complaint. There is no evidence that any union officer other than Krupa participated in the investigation of his grievance. Plaintiff's contention that Krupa was secretly hostile and decided not to pursue the grievance because of Corrales' race and Mexican origin is merely conclusory speculation when considered alongside his statements regarding his cordial working relationship with Krupa on the SS CORPUS CHRISTI; that Krupa was never hostile to him never or made any derogatory remarks about him; and that he and Krupa had very little contact. Nor do the incidents alleged demonstrate any disparate treatment or discriminatory animus in the Union's handling of his grievance. The Union also declined to proceed with arbitration in the only other grievance based on the issue of a temporary vis a vis a permanent port engineer position, which was filed by a white male. The incident of the Union's support in keeping the Company from discharging a Hispanic worker who spoke no English also weighs against plaintiff's allegations of discrimination.

---

5. Corrales' deposition, p. 157.

6. Id. at p. 160.

Plaintiff has failed to show "through materials of evidentiary quality" that a genuine issue of fact exists which could defeat defendant's well-documented motion for summary judgment. *Acosta v. Ames Department Stores, Inc.*, 386 F.3d 5, 8 (1st Cir.2004). Accordingly, the defendant's Motion for Summary Judgment (docket entry 35) is GRANTED, and plaintiff's cross motion for summary, (docket entry 36) which is actually an opposition to defendant's motion, is DENIED. Judgment shall be entered accordingly.

SO ORDERED.

### JUDGMENT

For the reasons stated in our Opinion and Order of this same date, this action is hereby DISMISSED.

SO ORDERED AND ADJUDGED.